DONALD, J., joined, and LAWSON, D.J., joined in the result. LAWSON, D.J. (pp. 501-08), delivered a separate opinion concurring in the judgment.
OPINION
McKEAGUE, Circuit Judge.
Dylan Marshall pled guilty to receiving child pornography over a period of 5 years, from the time he was 15 until he was 20. The district court varied downward from the guideline range and sentenced him to 5 years in prison — the mandatory minimum sentence for the offense — expressing its concerns with the perceived harshness of that sentence as it did so. Marshall has a rare physiological condition called Human Growth Hormone Deficiency, which he believes entitles him to the Eighth Amendment protections accorded to juveniles. But despite his condition, Marshall was an adult at the time . of the offense. We therefore affirm his sentence.
I. BACKGROUND
The Crime
In the summer of 2010, an FBI agent discovered that an individual operating under the name “Gotanks721” was using a peer-to-peer file sharing program to share files containing child pornography. The agent traced the IP address of the individual’s computer to a residence in Wauseon, Ohio.
FBI agents obtained a warrant and searched the residence, seizing two computers and other miscellaneous electronic media. They also interviewed Marshall, age 20 at the time, who lived in the house with his parents. Marshall admitting to using a file sharing program to share and download child pornography. He told the agents that he possessed pornographic images and videos of children ranging in age from four to twelve.
The FBI’s analysis of Marshall’s computer and other media revealed 261 images and 46 videos containing child pornography. The date stamps on the files ranged from May 2005 to September 2010. The analysis also revealed that beginning in 2009, Marshall had participated in online chat sessions discussing child pornography.
In December 2011, the government charged Marshall with one count of receiving child pornography in violation of 18 U.S.C. § 2252(a) and (b). Marshall pled guilty.
The Defendant
Aside from his involvement with child pornography, it appears that Marshall was headed toward becoming a productive member of society. He graduated from high school. He lived with his parents. He attended a community college part-time for four semesters, pursuing a career as a lab technician and paying his own tuition. He worked as a machine operator for a commercial bakery. He owned a car and had a credit card.
During an interview with his probation officer, Marshall said that he first started using file sharing programs to acquire music. He soon discovered the availability of pornography and viewed it almost every day. In his words, he used the file-sharing programs to look for “naked kids of my age.” PSR ¶ 29. According to his probation officer, “[h]e said that he felt like he *495 was viewing images of his peers. He indicated he has often felt like a 15 or 16-year-old individual because of his small frame and stature.” PSR ¶ 30.
Indeed, Marshall’s size and self-perceived age undergird most of the arguments he has raised on this appeal. In 2005, when Marshall was 15, he was diagnosed with Human Growth Hormone Deficiency. According to the Child Growth Foundation:
Growth hormone deficiency or insufficiency occurs when the pituitary gland, a small pea sized gland at the base of the brain, fails to produce adequate levels of growth hormone. Part of the brain called the hypothalamus controls the levels of hormones in the blood by triggering the pituitary gland into producing the required hormones. This low level of growth hormone may be due to problems with the hypothalamus or with the link between the hypothalamus and the pituitary gland or with the pituitary gland itself.... The level of growth hormone insufficiency may vary from mild to severe but as growth hormone is now available in large quantities, all children whose growth hormone levels are inadequate should be able to receive appropriate replacement treatment.
Children with growth hormone deficiency are very short but with normal body proportions, facial appearance and intelligence. Prior to treatment the child may also be “chubby” as growth hormone helps to control the fat under the skin. These children may look young for their age as physical development and bone age is delayed and consequently the skull will be immature producing the facial proportions of a younger child.
Child Growth Foundation, Growth Hormone Deficiency, Growth Hormone Deficiency: A Guide for Parents and Patients, 4 (Jan.2003), available at http://www. childgrowthfoundation.org/CMS/FILES/02_Growth_Hor-mone_Deficiency.pdf. In addition to stunted growth, growth hormone deficiency can result in delayed pubertal development. Child Growth Foundation, Puberty and the Growth Hormone Deficient Child, Growth Hormone Deficiency: A Guide for Parents axid Patients, 4 (June 2010), available at http://www.childgrowthfoundation.org/ CMS/FILES/03_GrowthHormone Deficiency.pdf.
When he was diagnosed at age 15, Marshall was extremely small for his age and had not yet entered puberty. He was treated with hormone injections for about five years. When his Presentence Investigation Report was prepared in 2012, he was 5'5" and weighed 117 pounds.
Before his sentencing hearing, Marshall was evaluated on two separate occasions by a clinical psychologist named Gregory Forgac. Marshall told Dr. Forgac that he started viewing child pornography when he was 15. He said that he began by looking for people his own age. He did not know it was wrong until the FBI appeared at his parents’ house.
Dr. Forgac noted that Marshall appeared younger than his chronological age. He administered a test called the Ammons Quick Test, which indicated that Marshall had an I.Q. of 87 and a meiital age of l&k. Dr. Forgac found Marshall’s diagnosis of Human Growth Hormone Deficiency to be noteworthy. He stated in his report that in addition to delayed physical growth, “[i]t is quite possible that self-perception and self-concept would also be significantly delayed.” R. 12-1, Report, PagelD #44. He found that Marshall “appealed] to be quite immature for his chronological age due to his condition, ... which inhibited his growth and maturation physically, emotionally and socially.” Id. “It is quite *496 likely that in all ways other than chronological age, this individual was still a juvenile at the time of his arrest.” Id. Dr. Forgac believed that “Marshall’s behavior was a product of adolescent curiosity, moral immaturity and easy availability of pornography.” Id. at PagelD # 44-45. He recommended “education, monitoring and supervision and the opportunity to mature to age appropriate levels both physically and psychologically.” Id. at PagelD # 45.
The Sentencing Hearing
Marshall submitted Dr. Forgac’s report to the district court along with his sentencing memorandum. His sentencing hearing was scheduled for June 4, 2012, but after reviewing the case and meeting with counsel, the district court postponed the hearing so that Dr. Forgac could appear and testify.
The hearing recommenced on June 25, 2012. Dr. Forgac appeared and testified. He explained that the Ammons Quick Test, which he had administered to Marshall, is a “brief screening device” that takes 10-15 minutes to administer and produces both an I.Q. score and an estimated mental age. R. 36, Hrg. Tr., PagelD # 192, 206. It involves asking the subject to match pictures with words .that “[sjtart out pretty concrete or simple” and “become increasingly more abstract.” Id. at PagelD # 205. Dr. Forgac stated that Marshall’s I.Q. score of.87 was in “the low average range of intelligence” and his mental age of 15)6 was consistent with his academic performance. Id. at PagelD # 194. However, he noted that Marshall was “not developmentally delayed intellectually.” Id. at PagelD # 199.
Dr. Forgac explained that the adolescence period does not end at 18 but actually extends into an individual’s mid-20s. “[Djevelopmental maturation goes to the mid, sometimes even late 20s so that people will receive developing adult identity from early 20s to late 20s.” Id. at PagelD # 198. Dr. Forgac thought “the only way that [Marshall was] not still a juvenile [was] his chronological age” and that “he [was] functioning at a juvenile level.” Id. at PagelD # 203. He believed that Marshall “viewed himself as a much younger individual and was functioning as a much younger individual.” Id.
The district court asked Dr. Forgac to explain exactly what role Marshall’s growth hormone deficiency played in the crime he committed. Dr. Forgac explained that Human Growth Hormone Deficiency “basically prevents maturation.” Id. at PagelD # 211. He identified several “different aspects of maturation”: chronological age, physical age, social age, emotional age, and intellectual age. Id. at PagelD # 212.
Dr. Forgac further explained that adolescents search for a “group identity.” Id. By interacting with their peers, they experience “consensual validation,” “start feeling an affiliation with a group,” and “are able to mature.” Id. This group interaction “is the road to an adult individual identity.” Id.
Unlike normal adolescents, Marshall was isolated by his peers due to his short stature and immature appearance. He turned to pornography and looked for children around his own age. He found group interactions and a shared experience through his online activities, including his chatting activities.
Dr. Forgac had performed 5,000 psychological evaluations, but before examining Marshall he had never encountered an individual with Human Growth Hormone Deficiency. He “didn’t do an extensive literature search,” but he talked to a neu-ropsychologist friend who “did a little bit of a search.” Id. at PagelD #214. Dr. Forgac believed that Marshall experienced *497 “a unique developmental delay” and thought it “significant that he was essentially 16, maybe 15-and-a-half years old in every way except chronological age at the time” the criminal activity occurred. Id. To a reasonable degree of psychological certainty, Dr. Forgac believed Marshall was “a kid as opposed to an adult.” Id. at PagelD # 218.
The Sentence
The district court accepted Dr. Forgac’s testimony. It found that Marshall was not an adult but was “a juvenile in a number of ways, chronological age aside,” when he engaged in the criminal activity. Id. at PagelD # 227. Marshall’s guideline range was 151 to 188 months, but the district court varied downward to the statutory mandatory minimum sentence of 5 years. See 18 U.S.C. § 2252(b)(1). It found that even the mandatory minimum sentence was greater than necessary, but realized that it could not impose a sentence lower than that amount. Instead, the district court expressed hope that this Court would somehow give it some relief from the constrictions of the mandatory minimum.
In a supplemental memorandum opinion, the district court explained in more detail its concerns with the 5-year mandatory minimum sentence. See United States v. Marshall, 870 F.Supp.2d 489 (N.D.Ohio 2012). It found that the “[testimony and other evidence at [Marshall’s] sentencing hearing supported] the conclusion that at the time of the crime [Marshall] was, and should be characterized for sentencing as, a developmental^ immature teenager lacking the ability to appreciate the illegality of child pornography and to control his viewing of easily accessible internet content.” Id. at 498.
The district court believed that the mandatory minimum sentence for receipt of child pornography was in “direct conflict” with its responsibility under 18 U.S.C. § 3553(a) to “fashion an appropriate sentence.” Id. at 496. It further opined that in Marshall’s case, the mandatory minimum sentence might be unconstitutional under the Eighth Amendment. Id. at 499. But it was unwilling to sentence below the mandatory minimum without some support in the caselaw. Id.
Marshall appealed, challenging his sentence on several grounds.
II. ANALYSIS
A. Standard of Review
“When reviewing sentencing decisions, we review the district court’s factual findings for clear error, while reviewing the district court’s conclusions of law de novo.” United States v. Hazelwood, 398 F.3d 792, 795 (6th Cir.2005).
B. Eighth Amendment Challenge
Marshall urges us to hold that his mandatory minimum sentence is unconstitutional based on Miller v. Alabama, in which the Supreme Court held that “mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment’s prohibition on ‘cruel and unusual punishments.’” - U.S. -, 132 S.Ct. 2455, 2460, 183 L.Ed.2d 407 (2012). The Court declined to decide whether the Eighth Amendment bars a discretionary sentence of life without parole for juvenile homicide offenders,[1] but noted that “appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncom *498 mon.” Id. at 2469. Relying on Miller, Marshall contends that his mandatory sentence is unconstitutional because it did not allow the district judge to sentence him based on his individual characteristics.
Marshall’s Eighth Amendment argument is premised on his assertion that he was a juvenile when he committed the crime. But this assertion is simply wrong. Marshall received child pornography between the ages of 18 and 20. He was therefore an adult when he committed the crime.
Marshall claims that based on his growth hormone deficiency, the district court explicitly found him to be a mental and physical juvenile and warns that such factual findings cannot be rejected absent clear error. We do not reject the district court’s findings.[2] But neither do we view them as relevant to the issue of whether Marshall qualifies as a juvenile for purposes of the Eighth Amendment.[3]
Under the Supreme Court’s jurisprudence concerning juveniles and the Eighth Amendment, the only type of “age” that matters is chronological age. The Supreme Court’s decisions limiting the types of sentences that can be imposed upon juveniles all presuppose that a juvenile is an individual with a chronological age under 18. See Miller, 132 S.Ct. at 2460 (“We therefore hold that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment’s prohibition on ‘cruel and unusual punishments.’ ”); Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 2030, 176 L.Ed.2d 825 (2010) (“Because ‘the age of 18 is the point where society draws the line for many purposes between childhood and adulthood,’ those who were below that age when the offense was committed may not be sentenced to life without parole for a nonhomicide crime.”); Roper v. Simmons, 543 U.S. 551, 568, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (“A majority of States have rejected the imposition of the death penalty on juvenile offenders under 18, and we now hold this is required by the Eighth Amendment.”).
The Supreme Court treats juveniles differently because they “have diminished culpability and greater prospects for reform.” Miller, 132 S.Ct. at 2464. They are often immature and irresponsible, peculiarly susceptible to bad influences, and their character is still malleable. Id. Marshall apparently thinks that he shares these traits and therefore believes there is no reason not to treat him differently as well. But he has ignored the crucial role that chronological age plays in our legal system and in the Supreme Court’s jurisprudence. The reasons for according special protections to offenders under 18 cannot be used to extend the same protections to offenders over 18.
The Supreme Court has recognized that drawing lines based on chronological age is a not-entirely-desirable but nonetheless necessary approach. In Roper v. Simmons, the Court extended from 16 to 18 the age under which offenders are constitutionally ineligible for the death penalty. *499 Roper, 543 U.S. at 568, 125 S.Ct. 1183. The Court explained its use of chronological age to establish the divide as follows:
Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn.... The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.
Id. at 574, 125 S.Ct. 1183.
Using chronological age as the touchstone for determining whether an individual is a juvenile or an adult is the standard approach in our legal system. “For purposes of [the Juvenile Delinquency Act], a ‘juvenile’ is a person who has not attained his eighteenth birthday....” 18 U.S.C. § 5031. Chronological age sets the boundaries for determining whether an individual is eligible to drive, vote, marry, buy and drink alcohol, be drafted, watch certain movies, and hold certain political offices. None of these age-based privileges and responsibilities ignore chronological age in favor of mental age.
In almost every state, Marshall could vote, serve on a jury, or marry without his parents’ consent when he committed the crime. See Roper, 543 U.S. at 569, 125 S.Ct. 1183. His immaturity did not render him ineligible for these benefits the law granted him by virtue of his chronological age.' Nor does his immaturity excuse him from the punishment the law imposes upon him as a consequence of that age.
The legal system that would emerge from Marshall’s proposed approach that defines a juvenile by factors other than chronological age would be essentially unmanageable. Before a court could impose on a defendant over 18 those punishments constitutionally barred from being imposed on juveniles, it would first have to wade through tedious expert testimony to determine whether the defendant’s mental age was commensurate with his chronological age. We refuse to impose such a difficult and time-consuming requirement on the district courts.
Additionally, an approach that ignores chronological age in favor of other aspects of maturity should cut both ways. Individuals under 18 with the mental maturity of adults would have to be classified as adults for purposes of the Eighth Amendment. This approach is unthinkable; the Supreme Court would never accept such an end-run around the constitutional protections for chronological juveniles.
Marshall contends that he should be treated differently from run-of-the-mill immature offenders because, due to his growth hormone deficiency, his immaturity is physiological and not merely psychological. The trouble with this argument is that the record does not show a direct link between his physiological condition and his mental immaturity. One of the sources Marshall cites for information on Human Growth Hormone Deficiency notes that children with this disorder have normal intelligence. See Child Growth Foundation, Endocrine Gland Disorders, http:// www.childgrowthfoundation.org/Default. aspx?page=ConditionsGHD (last visited November 20, 2013).
Dr. Forgac’s finding that Marshall had a mental age of l&k was based on the brief screening test he administered, not on Marshall’s physiological disorder. Dr. Forgac was by his own admission not an *500 expert on Human Growth Hormone Deficiency. When asked what role Marshall’s growth hormone deficiency played in the crime he committed, Dr. Forgac drew only an indirect link by theorizing that Marshall’s small stature caused other children to ostracize him, which in turn led him to seek “consensual validation” through pornography and online chatting. Dr. Forgac explicitly stated that Marshall was not developmentally delayed intellectually.[4] Furthermore, Dr. Forgac’s observation that Marshall functioned as a juvenile is clearly belied by the reality that Marshall attended college, worked a full-time job, and owned a car and credit card. From all objective indications, Marshall was functioning as a normal 20-year-old, not as a 15 1/2-year-old.
And even if we agreed with Marshall’s assertion that his growth hormone deficiency rendered him “literally unable to grow up,” we would still not be inclined to classify him as a juvenile. Considerations of efficiency and certainty require a bright line separating adults from juveniles. For purposes of the Eighth Amendment, an individual’s eighteenth birthday marks that bright line. We decline to create exceptions, even for offenders with rare physiological conditions.
In short, Marshall is at the very most an immature adult. An immature adult is not a juvenile. Regardless of the source of the immaturity, an immature adult is still an adult. Because Marshall is not a juvenile, he does not qualify for the Eighth Amendment protections accorded to juveniles. We therefore need not determine whether a mandatory 5-year sentence for a juvenile would be unconstitutional under the Supreme Court’s reasoning in Miller v. Alabama.
C. Additional Challenges
Marshall challenges his sentence on three additional grounds. These arguments lack merit and require only brief discussion.
First, Marshall challenges his sentence based on a perceived conflict between two federal statutes. Congress instructs district courts to impose sentences “sufficient, but not greater than necessary, to comply with” several enumerated purposes in the statute. 18 U.S.C. § 3553(a). Marshall contends that this provision, commonly known as the “parsimony provision,” conflicts with the 5-year mandatory minimum sentence required for defendants guilty of knowingly receiving child pornography. Marshall believes that in his situation a 5-year sentence is greater than necessary to accomplish the penological goals of deterrence, retribution, incapacitation, and rehabilitation. He argues that Congress could not have foreseen that the mandatory minimum would be applied to an offender with his unique characteristics.
This Court has already rejected this very argument. “When it comes to rigid minimum sentences, we acknowledge the tension with section 3553(a), but that very general statute cannot be understood to authorize courts to sentence below minimums specifically prescribed by Congress.” United States v. Cecil, 615 F.3d *501 678, 695 (6th Cir.2010) (quotation omitted). No matter how excessive a minimum sentence appears in a particular case, the parsimony provision does not allow courts to avoid imposing it. The whole point of mandatory mínimums is to remove from judges the discretion to impose low sentences on sympathetic defendants. Marshall’s argument that the mandatory minimum should be disregarded based on his unique characteristics must necessarily fail.
Second, Marshall contends that 18 U.S.C. § 2252 impermissibly grants sentencing authority to the prosecutor because there is no intelligible principle separating receipt (which carries a 5-year mandatory minimum sentence) from possession (which does not). But he has failed to recognize that possession of child pornography is a lesser included offense of receipt of child pornography. See United States v. Ehle, 640 F.3d 689, 695 (6th Cir.2011).[5] Whether to prosecute and whether to charge the greater offense or the lesser-included offense are decisions well within the prosecutor’s discretion. See United States v. Armstrong, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); United States v. Batchelder, 442 U.S. 114, 123-26, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).
Furthermore, even when two statutes prohibit the exact same conduct, the prosecutor can choose which statute to charge under. Batchelder, 442 U.S. at 123-126, 99 S.Ct. 2198. So long as “the provisions at issue plainly demarcate the range of penalties that prosecutors and judges may seek and impose,” “the power that Congress has delegated to those officials is no broader than the authority they routinely exercise in enforcing the criminal laws. Having informed the courts, prosecutors, and defendants of the permissible punishment alternatives available under each [statutory provision], Congress has fulfilled its duty.” Id. at 126, 99 S.Ct. 2198. This principle applies even when one of the two statutory provisions carries a mandatory minimum sentence and the other does not.
Third and finally, Marshall argues that his sentence is substantively unreasonable because the district court thought it should have discretion to impose a sentence below the mandatory minimum but did not do so. “[A] district court’s ardent desire to go lower does not make a statutory mandatory minimum sentence unreasonable.” Cecil, 615 F.3d at 695. “When a court and a mandatory minimum are in conflict, the minimum wins.” Id. When it has been challenged as being too high, a mandatory minimum sentence is by definition substantively reasonable.
III. CONCLUSION
We affirm Marshall’s 5-year sentence.

. The Court had held two years earlier that a sentence of life without parole for juvenile non-homicide offenders was unconstitutional under the Eighth Amendment. See Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 2030, 176 L.Ed.2d 825 (2010).

. We note, however, that the district court does not appear to have explicitly found Marshall to have been physically immature at the time of the offense. Nor, on our review, would the record support such a finding.

. Presumably a sentencing judge can consider a defendant’s maturity when evaluating his or her "history and characteristics” under 18 U.S.C. § 3553(a), which the district court did when imposing a below-guideline sentence in this case. In that context, a defendant’s mental age might have some legal relevance. But at issue in this case is the imposition of a mandatory minimum sentence, under which Marshall’s individual characteristics are not pertinent.

. Marshall's brief quotes the abstract of an article that connects brain development to human growth hormone. See Zvi Laron & Avinoam Galatzer, Growth Hormone, Somato-medin and Prolactin: Relationship to Brain Function, 7 Brain & Dev. 559, 564 (1985). The article notes that children with growth hormone deficiency have a lower I.Q., deficient visuomotor function, and deficient school achievements and social adjustment. But the article does not indicate that growth-hormone-deficient children have a lower mental age or perceive themselves to be younger than their chronological age. Marshall’s argument is based on his mental and physical age, not on his low I.Q.

. Ehle dealt with receipt and possession of child pornography under § 2252A, which can be violated when the images involve real or virtual minors. In contrast, § 2252 can only be violated by images depicting real minors. The Sixth Circuit has not yet held that possession is a lesser included offense of receipt under § ,2252. But the two statutes are "materially identical,” United States v. Dudeck, 657 F.3d 424, 429 (6th Cir.2011), and there is no reason not to extend Ehle’s holding to § 2252.