**UNITED STATES of America,**
**Plaintiff/Respondent,**

v.

**Dylan MARSHALL,**
**Defendant/Petitioner.**

**Case Nos. 3:11 CR 557, 3:14 CV 2692.**

United States District Court,
N.D. Ohio,
Western Division.

Signed Aug. 24, 2015.

Ava Rotell Dustin, Holly Taft Sydlow, Office of the U.S. Attorney, Toledo, OH, for Plaintiff/Respondent.

Andrew P. Hart, Donna M. Grill, Melissa M. Salinas, Office of the Federal Public Defender, Spiros P. Cocoves, Toledo, OH, for Defendant/Petitioner.

## MEMORANDUM OPINION AND ORDER

JACK ZOUHARY, District Judge.

### INTRODUCTION

As a child, Petitioner Dylan Marshall suffered from an undiagnosed and therefore untreated human growth hormone ("HGH") disorder. If adequately investigated by trial counsel early in his case, Marshall says his condition would have distinguished him from the typical defendant caught using peer-to-peer software to download and view child pornography. The Government would have then charged Marshall with possession of child pornography, which carries no mandatory minimum. Instead, he was charged with receipt, which carries a five-year mandatory minimum. Marshall pled guilty to receipt of child pornography, and this Court sentenced him to the five-year mandatory

minimum. Marshall now moves in two actions to vacate his conviction and sentence, claiming he received ineffective assistance of trial counsel (Case No. 3:11 CR 557, Doc. 49; Case No. 3:14 CV 2692, Doc. 1). Constitutionally adequate representation would not have focused on achieving a mandatory-minimum sentence, Marshall says, but rather a plea bargain that included no mandatory-minimum at all.

At a recent evidentiary hearing, Marshall presented the testimony of the now retired Assistant United States Attorney ("AUSA") who prosecuted this case, and of Marshall's trial counsel. *See United States v. Marshall,* Case No. 3:11–cr–557–JZ, 04/22/2015 Dkt. Entry.

Because Marshall received constitutionally adequate representation and the evidence shows no reasonable probability that Marshall's prosecution could have panned out differently, this Court must deny Marshall's Motion.

## STANDARD OF REVIEW

Marshall must show "(1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different." *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Marshall must show a "a probability sufficient to undermine confidence in the outcome" to show prejudice. *Id.* at 694, 104 S.Ct. 2052.

In September 2011, prior to the filing of the Information to which Marshall later pled guilty, this Court appointed trial counsel for Marshall (Doc. 66 at 10). Trial counsel's pre-Information decisions may put in context events that happened post-Information. To be sure, Marshall has a right to effective assistance of counsel during plea negotiations, *see Missouri v. Frye,* —— U.S. ——, 132 S.Ct. 1399, 1407–08, 182 L.Ed.2d 379 (2012), but only with respect to plea negotiations occurring *after* the right to counsel attaches, *see Kennedy v. United States,* 756 F.3d 492, 493 (6th Cir. 2014) (no right to counsel during pre-indictment plea negotiations).

## DISCUSSION

This Motion turns on when diligent trial counsel should have learned of key mitigation evidence, showing the likely developmental impacts of Marshall's HGH disorder, and on how diligent trial counsel should have used this information once it was obtained. Marshall focuses on the sentencing hearing testimony (and report) of Dr. Gregory Forgac, a forensic psychologist. Dr. Forgac has conducted more than 5,000 forensic exams of adults and juveniles facing charges in federal and state court (Doc. 36 at 14–17). He reviewed Marshall's medical records and discovery materials, and personally examined Marshall in January and February 2012 (*id.* at 17–18; *see also* Doc. 12–1 at 1).

Marshall "felt like he was viewing images of his peers. He indicated he has often felt like a 15 or 16–year–old individual because of his small frame and stature" (PSR at ¶ 30). Dr. Forgac, drawing on his background in developmental psychology, tied Marshall's HGH disorder to Marshall's self-perception (Doc. 36 at 31):

I think the only way that he is not still a juvenile is his chronological age, that he is functioning at a juvenile level. If we look at the fact that at 15–and–a–half he hadn't yet started puberty, that the average range for him is typically 13 to 16 years old and for females 11 to 14. And then with the human growth hormone treatment, he did start entering puberty during his 16th year.

But in terms of looking at himself, self concept, the way that he viewed himself, he viewed himself as a much younger individual and was functioning as a much younger individual. And in fact, he made a comment that he sort of thought of himself as 15 or 16 years old rather than, you know, 18, 19, 20. And I think that that's the case

Dr. Forgac went on to explain that Marshall's stunted physical growth and bullying from his peers caused social isolation and prevented Marshall from taking on a peer group identity that matched his chronological age, a social and emotional maturation stage that is on the "road to an adult individual identity" (*id.* at 40–41).

And I think that when he was talking to me and talking about what he was looking for, he was looking for kids his own age. And out of curiosity he didn't have a lot of interaction, he didn't have—he was fairly isolated at school. And so this was the way that he was looking for, you know, some interaction, even in terms of chatting with individuals. There may have been a feeling that he was having, you know, some interactions and was sharing an experience which is what adolescents, early adolescents want to do. They want to have consensual validation, and he did have some curiosity.

Dr. Forgac also placed Marshall's mental age at 15.5 years, a low-average range intelligence (*id.* at 22). The Government's

proof showed that Marshall first accessed child pornography in May 2005, when he was 15 years old, and last downloaded such materials in September 2010, when he was 20 years old (PSR at ¶ 12).

Marshall's three ineffective-assistance claims tie into this mitigation evidence. First, Marshall says "trial counsel completely failed to investigate Marshall's compelling mitigating circumstances," including the effects of his HGH disorder (Doc. 49 at ¶ 7). Because trial counsel did not uncover these facts, the Government did not know of Marshall's condition prior to filing the Information (*id.* at ¶ 6). Second, Marshall argues "trial counsel completely failed to negotiate any concession from the government in exchange for Marshall's unconditional plea of guilty" (*id.* at ¶ 9). Third, Marshall argues "trial counsel failed to move to withdraw Marshall's plea of guilty after trial counsel discovered evidence of Mr. Marshall's compelling mitigating circumstances," and, had trial counsel done so, evidence could have been presented to the Government and counsel could have negotiated a possession-only charge (*id.* at ¶¶ 11–13). This Court next considers whether trial counsel's representation was objectively unreasonable in each of these areas, then considers whether there is a reasonable probability any such error prejudiced Marshall.

**Failure to Investigate**

In July 2010, an FBI agent in Miami, Florida downloaded child pornography files from an internet protocol address later connected to Marshall's parents' home, where he lived (Doc. 35 at 15, 17). In October 2010, agents executed a search warrant at the Marshall home. *See United States v. 849 Burr Road, Wauseon, Ohio,* Case No. 3:10–mj–5098–JRK, Doc. 3. Then, in September 2011, the Government sent Marshall a "target letter," informing

him he was the subject of a criminal investigation. This Court appointed trial counsel to represent Marshall at that time (Doc. 66 at 10).

Trial counsel first met Marshall in October 2011, two months before the Government filed charges, visiting the Marshall home and speaking with Marshall and his parents (*id.* at 11–13). "He looked very young" (*id.* at 12). During the visit, trial counsel learned "there were issues with human growth hormone" (*id.* at 13). Prior to December 2011, trial counsel also learned that Marshall "had been on medication" for HGH disorder (*id.* at 14). But, at that time, trial counsel did not know "how significantly [HGH disorder] may or may not have impacted him," and counsel planned to make the condition a basis for mitigation arguments at sentencing (*id.* at 15).

Trial counsel could not recall if this knowledge was shared with the Government prior to the filing of charges. Likely not (*id.* at 15–16):

> I don't think I did because it seems like it would be a pretty, you know, I certainly—prior to filing of the [I]nformation I wouldn't have had a lot of information to discuss with [the AUSA] about the impacts of the human growth hormone issue that Dylan had. Did I mention it to [the AUSA], I genuinely don't remember.

While trial counsel retained Dr. Forgac prior to the filing of the Information (*id.* at 16–17), his office exam of Marshall occurred in January 2012, after the filing of the Information but before the guilty plea (*see* Doc. 2; *see also* Doc. 12–1 at 1). Dr. Forgac's February 2012 office exam occurred after the guilty plea. *See United States v. Marshall,* Case No. 3:11–cr–557–JZ, 02/08/2012 Dkt. Entry (Change of Plea). As a consequence, prior to the filing of the Information, trial counsel did

not yet have the complete report by Dr. Forgac or all the files of other medical professionals who had treated Marshall for his HGH disorder (Doc. 66 at 17). In hindsight, trial counsel felt more could have been learned about the effects of Marshall's disorder prior to the charging decision (*see id.*).

■ As the evidence shows, trial counsel did not "completely fail[ ]" to investigate Marshall's HGH disorder prior to Marshall's plea (Doc. 49 at ¶ 7). Rather, counsel discussed the disorder with Marshall and his mother two months before any charges were brought. Pre-Information, counsel retained Dr. Forgac to further explore that condition and, soon after the Information was filed, Dr. Forgac signed a contract formalizing the medical relationship (Doc. 66 at 56). Marshall attended the first of two mental health evaluations prior to the guilty plea, and trial counsel "touched base" with Dr. Forgac in between the first and second evaluations (*id.* at 57). And even though counsel received Dr. Forgac's written Report in May 2012, three months after the guilty plea, Dr. Forgac's conclusions were no surprise (*id.* at 57–58; *see also id.* at 59):

> Q. [The Court:] So once you received [Dr. Forgac's] report, was there anything in his report that surprised you or wasn't consistent with your conversations with him that gave you pause?
>
> A. I—I think that—I mean, in all honesty, I think that the report turned out, as far as—you know, Dylan had been viewing the pornography a couple, you know, this had occurred before age 21. So I think in that thought process of trying to go back, it wasn't just the day he was charged. It was a year or two before that all of this was occurring.

So, you know, I expected for Dr. [Forgac] to believe that he was younger and a lot of what he had said in the report.

That degree of investigation was reasonable in view of trial counsel's strategic choice to present Marshall's HGH disorder as a mitigating argument at sentencing. "In all honesty that was my focus. That's what—that's where I spent my energy was on his sentence" (*id.* at 58). Among other factors, Dr. Forgac's Report and testimony won Marshall a substantial downward variance, receiving 60 months imprisonment even though his Guidelines range was 151–188 months (Doc. 36 at 12). Even if in hindsight trial counsel would have pursued a different strategy (*see, e.g.,* Doc. 66 at 59), Marshall has not overcome the presumption that the approach trial counsel in fact followed denied him effective assistance.

**Failure to Negotiate a Plea Agreement**

■ Marshall asserts that "trial counsel utterly failed to negotiate with the government . . . [and he] entered an unconditional plea of guilty to receipt of child pornography without the benefit of any concession from the government of any kind" (Doc. 49 at 10 ¶ 28).

That is wrong. In fact, trial counsel and the Government negotiated a charge bargain, under which Marshall was charged with receipt of child pornography, even though his conduct could also have led to distribution and possession charges (Doc. 66 at 37–38). In the process, trial counsel asked the AUSA to charge Marshall with possession, rather than receipt, but the AUSA declined (*id.* at 62–63).

Marshall faced one of three charging scenarios: (1) possession-only, not subject to a statutory mandatory minimum; (2) the Information to which he in fact pled, with a statutory mandatory minimum; or (3) some mixture of possession, receipt, and distribution of child pornography, which would have carried with it a statutory mandatory minimum. Options 2 and 3 presented Marshall with substantially the same Guidelines range (*see id.* at 52–53). But trial counsel could reasonably conclude that Option 2 was superior to Option 3. As trial counsel explained: "I think, you know, you're hoping for the lowest sentence, so I think there's—there's an amount of hoping [t]he Judge will look at that favorably, that you resolved your matter [by a negotiated Information] before coming into court" (*id.* at 47). This decision to pursue an informal charge bargain also left Marshall free to argue the full range of sentencing factors and avoided appeal waiver provisions which can appear in a written plea agreement (see *id.* at 41–42).

Short of a possession-only charge, trial counsel's bargain resulted in the best outcome for Marshall. Even assuming that a deal struck prior to the beginning of adversary proceedings could be the basis for a *Strickland* challenge, Marshall has not shown deficient performance in the plea deal actually negotiated.

**Failure to Withdraw the Guilty Plea**

■ Finally, Marshall argues inadequate representation because trial counsel failed to move to withdraw his guilty plea once Dr. Forgac's Report was completed. "The record is replete with indications that the Court was severely troubled by the prospect of imposing a five-year prison sentence on Mr. Marshall, an emotionally and physically immature, non-violent defendant," Marshall states (Doc. 49 at 10 ¶ 28). Under these circumstances, reasonable trial counsel should have asked this Court to allow Marshall to withdraw his guilty plea, received leave of court to do so, and then pursued renewed charge ne-

gotiations with the Government armed with the mitigation evidence.

Trial counsel explained why that did not happen: "I just felt at the time he was stuck. I felt that my best shot frankly was to hope that [this Court] would give him the lowest possible sentence" (Doc. 66 at 59). Trial counsel felt a motion to withdraw would only have made things worse for Marshall, because the Government might file an indictment charging distribution, receipt, and possession (*id.* at 48; *see also id.* at 26–27). Remember, the Government had already refused to bring a possession-only case. Viewed from trial counsel's perspective at the time, that judgment was not objectively unreasonable.

**Prejudice from Trial Counsel's Use of the Mitigation Evidence**

 Even before formal filing of criminal charges, trial counsel began investigating Marshall's HGH disorder with a strategic aim of using that information in support of a sentencing-phase mitigation argument. Trial counsel arranged for Marshall to be examined twice by Dr. Forgac, and his May 2012 Report was attached to the Sentencing Memorandum filed with this Court. Based on those efforts, Marshall received a seven-and-a-half year downward variance from the base of the Guidelines range.

Still, for purposes of analysis only, this Court will assume that trial counsel's sentencing-phase focus was objectively unreasonable, and that trial counsel should have either (1) collected, on an expedited schedule, mitigation evidence to have in hand during initial charge bargaining, or (2) moved to withdraw Marshall's plea after collecting the mitigation evidence and then resumed plea negotiations with the Government.

However, under either scenario, Marshall cannot win relief unless he can show the outcome of plea negotiations and sentencing would have been different. Marshall received the shortest term of incarceration possible under the circumstances. He must therefore show a reasonable probability that, but for trial counsel's errors, the Government would have charged possession only, and therefore removed from the sentencing mix the five-year mandatory minimum. "A reasonable probability is a a probability sufficient to undermine confidence in the outcome," but "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693, 694, 104 S.Ct. 2052; *see also Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir.2009) (*Strickland* prejudice is not a preponderance-of-the-evidence standard). Marshall has not made such a showing.

To begin, the Government knew of Marshall's HGH disorder and some of its likely effects on Marshall's mental state even prior to the filing of the Information. Trial counsel reviewed the Government's discovery file before charge-bargain negotiations (Doc. 66 at 37–38). "The information [contained in the Government's file] was specifically just about that he had the diagnosis, information about medication, some information from Dylan about his diagnosis, but no information about what they all meant" (*id.* at 50; *see also id.* at 32–33) (referring to Marshall's mother's statement, relaying general information about Marshall's diagnosis and treatment). But that assessment is only partly correct. The file contained a summary of the statement Marshall gave to FBI agents in October 2010. Then twenty-years old, Marshall stated "he mentally fe[lt] as if he was 14 to 16 years old" and that he "never grew up and [was] still a child inside" (*id.* at 35).

Marshall's own comments to FBI agents fourteen months before the filing of the Information foreshadow the central theme that would emerge in Dr. Forgac's May 2012 Report and at the June 2012 sentencing: Marshall's HGH disorder led Marshall to self-identify as a child despite his chronological age, and that when he viewed child pornography he thought he was "he was looking for kids his own age" (Doc. 36 at 41).

Of course, the Government could have discounted Marshall's pre-Information statements as self-serving or uncorroborated. One hopes that, had the Government known of Dr. Forgac's views at the time it settled on a charge, it would have given greater weight to Dr. Forgac's expertise and neutrality. However, even with that expertise and neutrality, Dr. Forgac's comments with respect to Marshall's mental age were based in part on Marshall's self reports (*see id.*). And the Government had evidence that Marshall's offense conduct did not fit his claim that, because he self-identified as a teenager, his child pornography viewing habits grew out of a curiosity about children his "own age." The Government knew prior to filing the Information that Marshall possessed child pornography depicting child victims much younger than his perceived mental age of 15 or 16. *See United States v. Marshall*, 736 F.3d 492, 494 (6th Cir. 2013).

But most important, the AUSA, who made the charging decision in this case, explained what he would have done, had trial counsel attempted to use Dr. Forgac's opinions and related mitigation evidence to bargain for a possession-only charge (Doc. 66 at 73).

Q. [I]f you had possessed this information that was available in June of 2012 [at sentencing], prior to the time you filed the [I]nformation in December of 2011, would that have made a difference in your charging decision?

A. No.

Q. Is there anything that could have made a difference in your charging decision?

A. There might have been, but I didn't see it in this case. This was a distribution case. I looked at distribution cases as a—some of the most serious cases that we handle. So to answer your question, the answer's no.

The AUSA confirmed that trial counsel had asked for a possession-only charge, but asserted the "facts didn't warrant it" (*id.* at 77). He said that "having learned of [the mitigation] information if I felt that justice was not being done, I would have said something to" this Court (*id.* at 78). But he did not have such concerns in this case: "My [p]rovince is to decide what the facts are and what the law is and apply both to arrive at a proper charging decision" (*id.*). And the Government felt the facts and law here supported a receipt charge (*id.* at 70).

These statements by the AUSA are not contradicted, and are also credible because, before filing charges, the AUSA had discovery materials that relayed the fundamental fact underlying Marshall's key mitigation evidence: that Marshall was a child in all but chronological age.

The Government nonetheless charged Marshall with receipt. That charging decision, which rests with the Government and not trial counsel, may have been an "irresponsible" use of the Government's broad discretion to select charges. *See Marshall*, 736 F.3d at 507 (Lawson, J., concurring in the judgment). Unfortunately, this Court cannot award relief based on a disagreement with the charges

filed. Simply put, Marshall has not shown *Strickland* prejudice.

CONCLUSION

Clearly, this Court would have preferred a charging decision that did not include a mandatory minimum, and which in turn would have allowed this Court to fashion a sentence that included more treatment and less prison time. But this Court's hands were tied by statute to a prison term of at least five years.

For the reasons discussed above, this Court denies Marshall's Motion to Vacate or Set Aside Conviction and Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 49).

IT IS SO ORDERED.