# IN THE COURT OF APPEALS OF IOWA

No. 15-2061
Filed January 11, 2017

**TYLER A. KIMPTON,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, Judge.

Tyler Kimpton appeals the district court's dismissal of his postconviction-relief application. **AFFIRMED**

Jack E. Dusthimer, Davenport, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

Tyler Kimpton appeals the district court's dismissal of his application for postconviction relief (PCR). We affirm.

### I. *Background Facts and Proceedings.*

In March 2011, Tyler Kimpton pled guilty to second-degree robbery. He was sentenced to ten years in prison and, pursuant to Iowa Code section 902.12(5) (2009), is required to serve at least seventy percent of that sentence before he can be eligible for parole or work release. He did not appeal his conviction.

Almost four years after entry of his guilty plea, Kimpton filed a pro-se PCR application requesting reconsideration of the mandatory-minimum aspect of his sentence. His application stated that the governor had "issued the courts to re-look at 'youthful' offenders sentences with [seventy percent] mandatorys [sic] or life. Those first to be looked at were those under [eighteen years old]. Questions are now raised to age [twenty-four]." Because he "was under the age of [twenty-four] . . . at the time of [his] conviction" and this was his "first felony and first time in prison," he sought to have the seventy-percent mandatory-minimum aspect of his sentence lowered or dropped. He requested a hearing be set and PCR counsel be appointed to represent him.

Thereafter, the State filed a motion to dismiss, asserting Kimpton's PCR application was time-barred pursuant to Iowa Code section 822.3 (2015), divesting the court of jurisdiction. The State also argued *State v. Lyle*, 854 N.W.2d 378, 400 (Iowa 2014), wherein the court held mandatory-minimum sentences automatically imposed on defendants for crimes committed as

juveniles are "unconstitutional under the cruel and unusual punishment clause in article I, section 17 of [the Iowa] constitution," was inapplicable to Kimpton's circumstances because Kimpton was twenty-two at the time he committed second-degree robbery. In response, Kimpton argued that *Lyle* should be extended to apply to "mentally challenged adult offenders" such as himself because "[t]here is a movement towards limiting mandatory incarcerations both for juvenile offenders and for those individuals who might be mentally challenged as adult offenders as is in this case with [Kimpton]." Kimpton asserted that the mandatory-minimum aspect of his sentence was unconstitutional on that basis and his sentence therefore illegal, exempting his claim from the statute of limitations set forth in Iowa Code chapter 822.

Following a hearing, the district court entered its order dismissing Kimpton's PCR application based upon both the statute of limitations and the merits of Kimpton's claim. The court recognized Kimpton's attempt to "draw analogous results from mental incapacity to juveniles" but found the position was "currently not supported by Iowa law." The court concluded that the exception to the statute of limitations relating to grounds of fact or law that could not have been raised within the relevant time period was inapplicable.

## II. Discussion.

Kimpton now appeals, arguing the district court erred in dismissing his PCR application on statute-of-limitations grounds, and he requests we reverse and remand the matter back to the district court for further "developments of the facts and legal basis." Though we ordinarily review challenges to the trial court's jurisdiction, including illegal-sentence claims, for the correction of errors at law,

constitutional questions are reviewed de novo. *See State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009).

### A. *Statute of Limitations*.

Kimpton first contends his claim was not time-barred, relying upon *Veal v. State*, 779 N.W.2d 63, 64-65 (Iowa 2010), wherein the court reiterated that a claim of an illegal sentence may be raised at any time, and because a cruel-and-unusual-punishment challenge amounts to a claim of an illegal sentence, "the time restrictions in Iowa Code section 822.3 do not apply." The State agrees, as do we, so we proceed to the next issue.

### B. *Merits*.

Kimpton argues that because the application was improperly dismissed on statute-of-limitations grounds, we must reverse and remand the matter back to the district court. However, the State notes that despite the statute-of-limitations holding, the district court also analyzed Kimpton's categorical challenge under *Lyle* to determine whether *Lyle* gave him new grounds to challenge his sentence. The State asserts the district court's order of dismissal can be sustained on that basis. We agree.

Here, Kimpton cites scientific and legal materials examining the cognitive development of the adolescent brain for the proposition that the line between childhood and adulthood should be expanded to young adults eighteen-years old and older. He does not mention his alleged intellectual disabilities, urged in the underlying proceedings by PCR counsel, which undoubtedly would further support the use of the offender's mental age instead of the chronological age in distinguishing the line between childhood and adulthood. These arguments for

finding the mandatory-minimum aspect of his sentence unconstitutional categorically and as applied to him have appeal. Nevertheless, there is no legal basis for finding the mandatory-minimum aspect of the sentences imposed upon young-adult offenders possessing lower-than-average intelligence constitutes cruel and unusual punishment under the Federal or Iowa Constitution.

In *Roper v. Simmons*, 543 U.S. 551, 578 (2005), the Supreme Court held the death penalty cannot be imposed, irrespective of the crime, on a juvenile offender. It recognized that the "qualities that distinguish juveniles from adults do not disappear when an individual turns eighteen" and, "[b]y the same token, some under [eighteen] have already attained a level of maturity some adults will never reach." *Roper*, 543 U.S. at 574. Nevertheless, it accepted that "a line must be drawn" somewhere between childhood and adulthood, and, because eighteen "is the point where society draws the line for many purposes," it was "the age at which the line for death eligibility ought to rest." *Id.*; *see also United States v. Marshall*, 736 F.3d 492, 498 (6th Cir. 2013) ("The Supreme Court has recognized that drawing lines based on chronological age is a not-entirely-desirable but nonetheless necessary approach.").

Like *Roper*, the Iowa Supreme Court limited its holding in *Lyle* to only those "cases involving conduct committed by youthful offenders," stating that although "categorical rules can be imperfect, . . . one is necessary here." *Lyle*, 854 N.W.2d at 402. The court explicitly stated its holding

> ha[d] no application to sentencing laws affecting adult offenders. Lines are drawn in our law by necessity and are incorporated into the jurisprudence we have developed to usher the Iowa Constitution through time. This case does not move any of the lines that currently exist in the sentencing of adult offenders.

*Id.* at 403. If the supreme court's pronouncements are to be changed, they are best addressed by that court, as we are bound by its holdings. *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed."); *State v. Hughes*, 457 N.W.2d 25, 28 (Iowa Ct. App. 1990) (citing *State v. Eichler*, 83 N.W.2d 576, 578 (1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves.")).

Our legislature has drawn the line between childhood and adulthood at eighteen years of age. *See, e.g.*, Iowa Code §§ 225C.51(1), 232.2(5), 237C.1(2), 692A.101(19), 726.22(2) (all defining "child" or "minor" as a person "under eighteen years of age"). The legislature has had the opportunity to change or qualify the legal age of adulthood since *Lyle*, and it has not done so, signifying its tacit approval of *Lyle*. *See Drahaus v. State*, 584 N.W.2d 270, 276 (Iowa 1998) (holding that where the legislature has failed to amend a statute in response to a particular interpretation of the statute announced by the court, it is presumed that the "legislature has acquiesced in that interpretation"). It also has had the opportunity to amend Iowa Code section 902.12 to remove or qualify the minimum sentence it has proscribed for certain felonies. In fact, it just amended section 902.12 without any such changes. *See* 2016 Iowa Acts ch. 1104 §§ 1-8.

"[L]egislative determinations of punishment are entitled to great deference," and "[s]trict proportionality in sentencing . . . is not required." *Bruegger*, 773 N.W.2d at 872-73. Furthermore, "[l]egislative judgments are generally regarded as the most reliable objective indicators of community standards for purposes of determining whether a punishment is cruel and

unusual." *Id.* at 873. The proper recourse to address Kimpton's policy concerns is through the legislature, not the court. *See State v. Nicoletto*, 845 N.W.2d 421, 432 (Iowa 2014) (stating that decision whether certain individuals "should be drawn into" a statute "is a matter for the legislature"); *see also King v. Burwell*, 135 S. Ct. 2480, 2496 (2015) ("In a democracy, the power to make the law rests with those chosen by the people.").

For the foregoing reasons, the mandatory-minimum aspect of Kimpton's sentence does not constitute cruel and unusual punishment under the Federal or Iowa Constitution. Accordingly, we affirm the district court's order dismissing Kimpton's PCR application.

**AFFIRMED.**