**IN THE COURT OF APPEALS OF IOWA**

No. 15-1812
Filed January 11, 2017

**COREY D. CRAWLEY,**
　　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　　Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J.
Harris, Judge.

An eighteen-year-old convicted of second-degree robbery challenges his
sentence as cruel and unusual. **AFFIRMED.**

Cory J. Goldensoph, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant
Attorney General, for appellee State.

Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

In *State v. Lyle*, 854 N.W.2d 378, 400 (Iowa 2014), the Iowa Supreme Court held that mandatory-minimum sentences automatically imposed on defendants for crimes committed as juveniles are "unconstitutional under the cruel and unusual punishment clause in article I, section 17 of [the Iowa] constitution." In this postconviction-relief action, Corey Crawley seeks to expand that holding to his circumstances, arguing that although he was legally an adult when he committed second-degree robbery, he was not mentally an adult because of his lower-than-average intelligence and his young age of eighteen-and-eight months.[1] On that basis, he contends the mandatory-minimum aspect of his sentence is cruel and unusual as applied to him under the Eighth Amendment of the Federal Constitution and article 1, section 17 of the Iowa Constitution. Upon our de novo review, *see State v. Oliver*, 812 N.W.2d 636, 639 (Iowa 2012), we affirm.

Both the U.S. Constitution and the Iowa Constitution prohibit the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII; Iowa Const. art. I, § 17 ("Excessive bail shall not be required; excessive fines shall not be imposed, and cruel and unusual punishment shall not be inflicted."). Underlying the constitutions' prohibition is the venerable adage "that punishment should fit the crime." *State v. Bruegger*, 773 N.W.2d 862, 872 (Iowa 2009). "[T]he right to be free from cruel and unusual punishment flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned to

---

[1] Crawley's conviction for second-degree robbery was affirmed by this court on direct appeal. *See State v. Crawley*, No. 11-0466, 2012 WL 470174, at *5 (Iowa Ct. App. Feb. 15, 2012).

offense.'" *State v. Null*, 836 N.W.2d 41, 57 (Iowa 2013) (citation omitted). However, the right's meaning and interpretation is "not static" but rather ever evolving. *See Lyle*, 854 N.W.2d at 384. Thus, constitutional challenges alleging cruel and unusual punishment must be considered under the current, prevailing "standards of whether a punishment is 'excessive' or 'cruel and unusual,'" drawing "meaning from the evolving standards of decency that mark the progress of a maturing society." *Id.* Based on these principles, the Supreme Court over time has identified certain categorical circumstances wherein the imposition of austere punishments is considered cruel and unusual, irrespective of idiosyncratic facts. *See Miller v. Alabama*, 132 S. Ct. 2455, 2460 (2012) (holding "mandatory life without parole for those under the age of [eighteen] at the time of their crimes violates the Eighth Amendment's prohibition on "cruel and unusual punishments"); *Graham v. Florida*, 560 U.S. 48, 82 (2010) (holding "the imposition of a life without parole sentence on a juvenile offender who did not commit homicide" is cruel and unusual punishment); *Kennedy v. Louisiana*, 554 U.S. 407, 413, 438 (2008) (holding an offender cannot be sentenced to death—regardless of their personal characteristics—where the offender was only convicted of a nonhomicide offense and "the crime did not result, and was not intended to result, in [the] death of the victim"); *Roper v. Simmons*, 543 U.S. 551, 578 (2005) (holding the death penalty cannot be imposed, irrespective of the crime, on a juvenile offender); *Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (holding that death penalty cannot be imposed, irrespective of the crime, on an intellectually disabled criminal offender).

In *Roper*, the Court categorically barred "imposition of the death penalty on any offender under [eighteen] years of age," explaining:

> The differences between juvenile and adult offenders are too marked and well understood to risk allowing a youthful person to receive the death penalty despite insufficient culpability. An unacceptable likelihood exists that the brutality or cold-blooded nature of any particular crime would overpower mitigating arguments based on youth as a matter of course, even where the juvenile offender's objective immaturity, vulnerability, and lack of true depravity should require a sentence less severe than death. In some cases a defendant's youth may even be counted against him.

543 U.S. at 572-73. The Court recognized that the "qualities that distinguish juveniles from adults do not disappear when an individual turns eighteen" and, "[b]y the same token, some under [eighteen] have already attained a level of maturity some adults will never reach." *Id.* at 574. Nevertheless, it accepted that "a line must be drawn" somewhere between childhood and adulthood, and, because eighteen "is the point where society draws the line for many purposes," it was "the age at which the line for death eligibility ought to rest." *Id.*; *see also United States v. Marshall*, 736 F.3d 492, 498 (6th Cir. 2013) ("The Supreme Court has recognized that drawing lines based on chronological age is a not-entirely-desirable but nonetheless necessary approach.").

Like *Roper*, the Iowa Supreme Court limited its holding in *Lyle* to only those "cases involving conduct committed by youthful offenders," stating that although "categorical rules can be imperfect, . . . one is necessary here." *Lyle*, 854 N.W.2d at 402. The court explicitly stated its holding

> ha[d] no application to sentencing laws affecting adult offenders. Lines are drawn in our law by necessity and are incorporated into the jurisprudence we have developed to usher the Iowa Constitution through time. This case does not move any of the lines that currently exist in the sentencing of adult offenders.

*Id.* at 403. If the supreme court's pronouncements are to be changed, they are best addressed by that court, as we are bound by its holdings. *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed."); *State v. Hughes*, 457 N.W.2d 25, 28 (Iowa Ct. App. 1990) (citing *State v. Eichler*, 83 N.W.2d 576, 578 (1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves.")).

Crawley's arguments for finding the mandatory-minimum aspect of his sentence unconstitutional as applied to him have appeal. Nevertheless, like the Supreme Court, and recognized by the Iowa Supreme Court in *Lyle*, our legislature has drawn the line between childhood and adulthood at eighteen. *See, e.g.*, Iowa Code §§ 225C.51(1), 232.2(5), 237C.1(2), 692A.101(19), 726.22(2) (all defining "child" or "minor" as a person "under eighteen years of age"). The legislature has had the opportunity to change or qualify the legal age of adulthood since *Lyle*, and it has not done so, signifying its tacit approval of *Lyle*. *See Drahaus v. State*, 584 N.W.2d 270, 276 (Iowa 1998) (holding that where the legislature has failed to amend a statute in response to a particular interpretation of the statute announced by the court, it is presumed that the "legislature has acquiesced in that interpretation"). It also has had the opportunity to amend Iowa Code section 902.12 to remove or qualify the minimum sentence it has proscribed for certain felonies. In fact, it just amended section 902.12 without any such changes. *See* 2016 Iowa Acts ch. 1104 §§ 1-8.

"[L]egislative determinations of punishment are entitled to great deference," and "[s]trict proportionality in sentencing . . . is not required." *Bruegger*, 773 N.W.2d at 872-73. Furthermore, "[l]egislative judgments are generally regarded as the most reliable objective indicators of community standards for purposes of determining whether a punishment is cruel and unusual." *Id.* at 873. The proper recourse to address Crawley's policy concerns is through the legislature, not the court. *See State v. Nicoletto*, 845 N.W.2d 421, 432 (Iowa 2014) (stating that decision whether certain individuals "should be drawn into" a statute "is a matter for the legislature"); *see also King v. Burwell*, 135 S. Ct. 2480, 2496 (2015) ("In a democracy, the power to make the law rests with those chosen by the people.").

For the foregoing reasons, we decline Crawley's request that we find the mandatory-minimum aspect of his sentence grossly disproportionate under the Federal or Iowa Constitution. Crawley's sentence is constitutional. Accordingly, we affirm the district court's order denying Crawley's application for postconviction relief.

**AFFIRMED.**

Danilson, C.J., concurs; McDonald, J., concurs specially.

**MCDONALD, Judge.** (concurring specially)

*Lyle* forecloses Crawley's state constitutional challenge to his sentence; I thus concur in the judgment. I refrain from joining the panel opinion because the text of the Cruel and Unusual Punishment Clause of the Iowa Constitution does not contain a proportionality provision that authorizes the judiciary to "blue pencil criminal sentences to advance judicial perceptions of fairness." *State v. Bruegger*, 773 N.W.2d 862, 873 (Iowa 2009). As Justice Thomas noted with respect to the parallel Eighth Amendment to the Federal Constitution:

> "[T]he Cruel and Unusual Punishments Clause was originally understood as prohibiting torturous *methods* of punishment—specifically methods akin to those that had been considered cruel and unusual at the time the Bill of Rights was adopted." The clause does not contain a "proportionality principle." In short, it does not authorize courts to invalidate any punishment they deem disproportionate to the severity of the crime or to a particular class of offenders. Instead, the clause "leaves the unavoidably moral question of who 'deserves' a particular nonprohibited method of punishment to the judgment of the legislatures that authorize the penalty."

*Miller v. Alabama*, 132 S. Ct. 2455, 2483 (2012) (Thomas, J., dissenting) (citations omitted). Our case law is consistent with this view. As Chief Justice Cady has explained, "sentencing . . . is an area of the law for which courts are required to give great deference to the policies of the legislature as written into sentencing statutes." *Bruegger*, 773 N.W.2d at 886 (Cady, J., dissenting). This is because "[l]egislative judgments are generally regarded as the most reliable objective indicators of community standards for purposes of determining whether a punishment is cruel and unusual." *Id.* at 873. For these reasons, I concur only in the judgment.