RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0276p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

CHRISTIAN SHERRILL (19-5815); EDDIE POINDEXTER (19-5817); WILLIE SOMERVILLE (19-5983),

*Defendants-Appellants*.

Nos. 19-5815/5817/5983

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:17-cr-20422-4—Sheryl H. Lipman, District Judge.

Argued: July 30, 2020

Decided and Filed: August 24, 2020

Before: MOORE, CLAY, and MURPHY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Vicki M. Carriker, Memphis, Tennessee, for Appellant in 19-5815. Alexander C. Wharton, THE WHARTON LAW FIRM, Memphis, Tennessee, for Appellant in 19-5983. David Pritchard, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee. **ON BRIEF:** Vicki M. Carriker, Memphis, Tennessee, for Appellant in 19-5815. Alexander C. Wharton, THE WHARTON LAW FIRM, Memphis, Tennessee, for Appellant in 19-5983. Jennifer Danielle Fitzgerald, FITZGERALD & HARRIS, Memphis, Tennessee, for Appellant in 19-5817. David Pritchard, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

CLAY, J., delivered the opinion of the court in which MOORE, J., joined. MURPHY, J. (pg. 27), delivered a separate opinion concurring in part and in the judgment.

---

**OPINION**

---

CLAY, Circuit Judge.   Defendants Christian Sherrill, Eddie Poindexter, and Willie Somerville were indicted on multiple criminal counts arising out of their attempted robbery of Timothy Edwards, during which Edwards was killed.  Following a jury trial, all three were convicted of attempting to obstruct, delay, or affect commerce by robbery, in violation of 18 U.S.C. § 1951 (the "Hobbs Act") and § 2, and the knowing use or carry of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2, or aiding and abetting those crimes.  Somerville was also convicted of possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c), and causing the death of a person through the use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(j)(1).

Defendants now appeal their convictions and sentences.  For the reasons set forth in this opinion, we **AFFIRM** the district court's decision in its entirety.

**BACKGROUND**

**Factual Background**

In the winter of 2016–2017, Defendant Somerville began planning to rob Timothy Edwards, sharing some details of that plan with Defendant Sherrill.  Defendants planned to take drugs and money from Edwards, who had been selling cocaine in the area for years and frequently conducted drug deals from his home.

On January 19, 2017, Defendants set the plan in motion.  Somerville and Sherrill recruited codefendant Armoni Hall to participate, who agreed when they showed up at his apartment to ask for his help.  Codefendant Darrell Owens joined them.  The four then picked up Defendant Poindexter in Somerville's fiancée's white Dodge Charger, bringing with them two guns—a shotgun and a nine-millimeter pistol.  Along the way to Edwards' house, Somerville instructed the others on how they should commit the robbery.

When the group approached Edwards' neighborhood, Sherrill switched into the driver's seat. Sherrill then dropped off Somerville, Hall, and Poindexter at the end of Edwards' street, and he and Owens drove away, Sherrill having been instructed by Somerville to wait with the car in the parking lot of apartments nearby. Somerville, Hall, and Poindexter walked toward Edwards' home, with Somerville carrying the pistol and Hall the shotgun. After peering into a window of Edwards' home, they kicked in his door. Edwards immediately confronted them, struggling to disarm Hall. Somerville then opened fire, shooting Edwards multiple times and killing him. One of Somerville's shots also hit Hall.

The group fled toward the car. Hall collapsed along the way, and Sherrill and Owens ultimately drove away without Poindexter, Somerville, or Hall. Law enforcement later found Hall a block away, lying in the street and bleeding from a gunshot wound.

The Dodge Charger was picked up by the police at some point thereafter, and was identified by a witness who saw it in Edwards' neighborhood just before the attempted robbery. Weeks later, law enforcement also recovered a Ruger nine-millimeter pistol and a Mossberg shotgun that had been found abandoned in the neighborhood. Hall identified the pistol as the one carried by Somerville and the shotgun as the one he carried on the night of the robbery. Edwards' autopsy and law enforcement's investigation also uncovered bullets and shell casings matching the Ruger nine-millimeter pistol.

**Procedural Background**

In December 2017, Somerville, Sherrill, Poindexter, Hall, and Owens were each charged with three counts relating to the robbery: attempt to commit Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Count 1); using or carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2 (Count 2); and possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2 (Count 3). They were later also charged with unlawfully and with malice aforethought causing the death of a person through the use of a firearm, in violation of 18 U.S.C. §§ 924(j)(1) and 2 (Count 4). Hall and Owens entered guilty pleas, and Somerville, Poindexter, and Sherrill proceeded to trial.

Prior to trial, Defendants made several motions relevant to this appeal. First, Sherrill and Somerville moved to sever their trials from those of their codefendants. They argued that the evidence brought against their codefendants would spill over into the jury's consideration of their cases and that the introduction at trial of incriminating statements provided by their codefendants would violate their rights under the Confrontation Clause, as interpreted in *Bruton v. United States*, 391 U.S. 123 (1968), if those codefendants did not testify. After Hall and Owens entered guilty pleas and were set to testify at trial, the only remaining statement in question was that of Defendant Poindexter. Somerville later requested that if the court denied his motion to sever, it instead adopt additional proposed redactions to Poindexter's statement that would "cure[] any direct or identifiably indirect reference to [Somerville]." (Somerville Reply Supporting Mot. to Sever, R. 122 at PageID #329.) Sherrill did not propose any further redactions.

The court denied both Defendants' motions to sever, but granted Somerville's requested redactions. Poindexter's statement, as introduced at trial, read as follows:

> Someone was the person who set everything up in regards to the incident on Douglas Street regarding [Edwards], who was killed the other night. On Thursday, January 19th, 2017, . . . someone called me and told me that he wanted to hit this lick and wanted to know if I wanted to go. I told him I did want to go.
>
> A couple hours later, when it was dark, he came to pick me up. Others were already with him. . . . After they picked me up, they went to pick up the guns from the White Folks Projects in Covington. I am not sure exactly where he got them because he walked by several houses. When he came back, he had a long barrel shotgun and a pistol.
>
> We then drove over to Douglas Street. We got out of the car and walked towards [Edwards'] house on Douglas Street. Someone had the pistol and someone had the shotgun. At this time, someone was driving the car. We all three walked to the carport.
>
> Someone kicked open the door and went inside, but the man inside was trying to force him out. Someone made his way into the house, someone second, and then I heard a shot. After I heard the shot, I ran through some backyards towards the car that was backed into the apartments on . . . Boals Street.
>
> Once I returned the car, someone asked where they were. I told him that I heard some shots and I think they were coming. I then walked home to my house on Price Street.

> When I made it home, my grandmother said that someone was dead. However, I later learned that he was shot and still alive.
>
> At any time during the incident, I was not armed.

(Trial Tr., R. 280 at PageID ##2997–98.) Neither Sherrill nor Somerville renewed their motion to sever or objected to the admission of this statement at trial.

Defendant Sherrill next filed a motion in limine pursuant to Federal Rule of Evidence 403 to exclude evidence suggesting that he was in a gang, including photographs of him and his codefendants wearing colors and making hand signs associated with gangs. The district court denied this motion, finding the evidence could properly be admitted for the purpose of identifying the defendants and establishing their relationship with one another. The photographs were later admitted at trial with black boxes covering the relevant hand signs, although Sherrill requested the photographs instead be cropped from the shoulder level down.

After a trial in January 2019, the district court declared a mistrial when a juror absconded during deliberations. Defendants were retried in late February and early March 2019. The jury ultimately convicted Somerville on all four counts. They convicted Sherrill and Poindexter on Counts 1 and 2, acquitted Sherrill and Poindexter on Count 3, and failed to reach a unanimous verdict regarding their guilt on Count 4. The government then moved to dismiss Count 4 against Sherrill and Poindexter, and the district court granted the motion.

Prior to sentencing, the probation office prepared a Presentence Report ("PSR") for each Defendant. Somerville's PSR identified his base offense level, including relevant enhancements, as 49 for Counts 1 and 4 (attempt to commit Hobbs Act robbery and causing the death of a person through the use of a firearm in violation of 18 U.S.C. § 924(c)). Although Somerville's offense level was "more than 43," it was "treated as an offense level of 43," as the Guidelines require. U.S.S.G. Ch. 5, Pt. A, comment. n.2. He was assigned a criminal history category of V based on his history of juvenile and adult convictions including prior robberies, assault involving the threat of bodily injury, and firearms offenses. Based on this, his Guidelines range for Counts 1 and 4 was determined to be life imprisonment, with a statutory maximum of twenty years for Count 1 and life imprisonment for Count 4. For Counts 2 and 3 (the 18 U.S.C. § 924(c) violations), which were calculated separately, his Guidelines range was ten years imposed

consecutively to all other counts, with a statutory minimum of ten years and maximum of life. The PSR recommended that the Court vary downwards and impose a sentence of 420 months' imprisonment.

At Somerville's sentencing, the district court heard testimony regarding his gang membership and his attempts to influence witnesses' testimony against him, including by pressuring a witness to provide a false alibi for him, implying to his codefendants that his gang would attack them if they admitted anything incriminating to law enforcement, sending witness statements against him to other gang members, and even threatening to have codefendant Armoni Hall's mother killed if Somerville received a life sentence. In analyzing the 18 U.S.C. § 3553(a) factors, the district court also considered potentially mitigating circumstances, such as Somerville's history of mental health issues, including bipolar disorder. The district court concluded that Somerville posed a grave threat to public safety and decided to impose a term of life imprisonment plus ten years, emphasizing the severity of Somerville's crime, his history of violent conduct, and his threats against witnesses.

Defendant Sherrill's PSR identified a base offense level of 43 for Count 1, with no adjustments recommended. With one prior adult conviction for theft of property and possession of an item with an altered serial number, Sherrill's criminal history category was I. His Guidelines imprisonment range was initially life, but was reduced to the statutory maximum of twenty years. For Count 2, the PSR identified a statutory minimum and Guidelines sentence of ten years' imprisonment. The PSR recommended a sentence of 360 months' imprisonment, including 240 months on Count 1 and 120 months on Count 2. Sherrill objected, arguing in particular that he was entitled to a Guidelines reduction based on his purportedly minor role in the offense, pursuant to U.S.S.G. § 3B1.2(b). The PSR recommended denying that reduction.

At sentencing, Sherrill reiterated his argument based on U.S.S.G. § 3B1.2(b), and after a brief exchange with the district court, agreed to pursue a variance based on his purportedly minor role. The court did not explicitly consider the applicability of § 3B1.2(b), but it denied Sherrill the requested variance, finding that he was equally culpable for the crime, even though he acted as a getaway driver. The court proceeded to analyze the 18 U.S.C. § 3553(a) factors, noting in particular that although Sherrill had a minimal criminal history, he had committed this crime just

after finishing his term of imprisonment for his prior offense.  It also considered Sherrill's difficult childhood, observing that he was "raised in public housing" and "mov[ed] around some based on . . . instability because of [his] mom's drug issues." (Sherrill Sent'g Hr'g Tr., R. 273 at PageID #2336.)  The court chose to impose a sentence of 330 months' imprisonment, granting a 30-month downward variance from Sherrill's Guidelines range because Sherrill's conduct was swayed by Defendant Somerville's influence over him.

Finally, Poindexter's PSR also identified a base offense level of 43 for Count 1, with no adjustments recommended.  Based on his prior juvenile and adult convictions for crimes including assault, domestic assault, theft, and aggravated burglary, Poindexter's criminal history category was III.  Like Sherrill, Poindexter's Guidelines imprisonment range for Count 1 was initially life, but was reduced to the statutory maximum of twenty years.  And again, for Count 2, the PSR identified a statutory minimum and Guidelines sentence of ten years' imprisonment. The PSR thus also recommended a sentence of 360 months' imprisonment for Poindexter, including 240 months on Count 1 and 120 months on Count 2.

At Poindexter's sentencing, the district court explained its analysis of the § 3553(a) factors, highlighting in particular Poindexter's long and violent criminal history and gang membership and weighing these against Poindexter's history of mental health issues and difficult family life.  It placed particular weight on Poindexter's apparent efforts to secure treatment for his mental health issues, which were thwarted by his mother's refusal to take him to his doctor's appointments or fill his prescriptions.  It concluded that this situation caused Poindexter to have "less control" over his behavior "than [he] should have had," and granted a 30-month downward variance in recognition of that fact. (Poindexter Sent'g Hr'g Tr., R. 272 at PageID ##2300–01.) After considering these factors, the court gave Poindexter a sentence of 330 months' imprisonment.

This timely appeal followed.

**DISCUSSION**

**I. Severance**

On appeal, Sherrill and Somerville argue that the district court erred by refusing to sever their trials, asserting—as they did below—that the introduction of Poindexter's statement violated their rights under the Sixth Amendment's Confrontation Clause because they could not cross-examine him. We disagree and affirm the district court's decision not to sever Defendants' trials.

We note at the threshold that Sherrill and Somerville have not adequately preserved this argument for this Court's review. While both properly moved to sever their trials from those of their codefendants under Federal Rule of Criminal Procedure 14 prior to trial, neither renewed that motion following the close of the evidence at trial. Thus, Defendants waived this issue. *United States v. Swift*, 809 F.2d 320, 323 (6th Cir. 1987) ("[W]e hold that a severance motion will be deemed waived if it is not renewed at the end of evidence.").

Ordinarily, we review a district court's denial of a defendant's motion to sever for an abuse of discretion. *United States v. Anderson*, 89 F.3d 1306, 1312 (6th Cir. 1996). However, when a defendant waives this issue by failing to renew their motion to sever following the close of evidence, we have in some instances declined to review the issue at all. *See, e.g.*, *United States v. Mann*, 195 F. App'x 430, 435–36 (6th Cir. 2006); *United States v. Allen*, 160 F.3d 1096, 1106–07 (6th Cir. 1998); *United States v. Hudson*, 53 F.3d 744, 747 (6th Cir. 1995). In others, we have reviewed the issue for plain error. *See, e.g.*, *United States v. Fields*, 763 F.3d 443, 456 (6th Cir. 2014); *United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002); *Anderson*, 89 F.3d at 1312. Under that analysis, defendants must show: "(1) error; (2) that was plain; (3) that affected a substantial right and that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Fields*, 763 F.3d at 456.

We need not decide which is the proper course today, as the government does not argue that we should decline to address Defendants' severance arguments altogether, but instead contends that we should review the issue for plain error. Thus, the government has forfeited any argument that we should not address this issue. *See United States v. Boudreau*, 564 F.3d 431,

435 (6th Cir. 2009) (explaining that "as with any other argument, the government can forfeit a waiver argument by failing to raise it in a timely fashion" (quoting *Hunter v. United States*, 160 F.3d 1109, 1113 (6th Cir. 1998))). In any event, Defendants' argument fails even under the plain error standard. We turn now to its merits.

Federal Rule of Criminal Procedure 8(b) permits courts to jointly try defendants "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." As the Supreme Court has explained, this rule "promote[s] economy and efficiency and . . . avoid[s] a multiplicity of trials." *Zafiro v. United States*, 506 U.S. 534, 540 (1993) (quoting *Bruton*, 391 U.S. at 131 n.6). However, a court may sever defendants' trials if a joint trial would prejudice a defendant. Fed. R. Crim. P. 14(a). Severance should be granted only when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. "[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id.* at 540.

Somerville and Sherrill argue that their joint trial compromised their rights under the Sixth Amendment's Confrontation Clause because Poindexter's statement, as introduced at trial, implicated them in the crime but they were not afforded the opportunity to cross-examine Poindexter because he chose to exercise his Fifth Amendment privilege against self-incrimination. Of course, Defendants are correct that "a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 207 (1987) (citing *Bruton*, 391 U.S. at 135–36). But the Supreme Court has explained that a court may remedy this possibility by redacting facially incriminating information from the relevant statement. *Id.* at 208–09; *see also id.* at 211 ("We hold that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name,

but any reference to his or her existence.").**[1]** The Court later clarified that "[r]edactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration" did not remedy the Confrontation Clause issue. *Gray v. Maryland*, 523 U.S. 185, 192 (1998). However, it left open the possibility that the substitution of neutral pronouns could. *Id.* at 196–97. This Court has since confirmed that redacting a defendant's name and substituting a neutral term in its place "avoids any Sixth Amendment or *Bruton* violation" when there are multiple individuals involved in a crime and the substitution does not necessarily implicate a specific defendant. *United States v. Vasilakos*, 508 F.3d 401, 408 (6th Cir. 2007) (discussing a statement in which "the person" or "another person" had been substituted for the defendants' names); *accord United States v. Al-Din*, 631 F. App'x 313, 321 (6th Cir. 2015) (explaining that when one defendant's name "was replaced with the neutral phrases 'someone' and 'the guy,'" and the other "was not referred to at all," the "redactions and alterations . . . avoid[] a *Bruton* violation").

In this case, the government appropriately redacted all names—including Sherrill and Somerville's—from Poindexter's statement and substituted in neutral terms like "someone." Under our precedent, this suffices to avoid any potential Confrontation Clause issue, as those neutral pronouns could have referred to any of the individuals allegedly involved in the robbery, and therefore did not necessarily implicate Sherrill or Somerville. Indeed, Somerville himself admitted as much when he proposed the redactions that the court later adopted, saying that they would "cure[] any direct or identifiably indirect reference to [Somerville]." (Somerville Reply Supporting Mot. to Sever, R. 122 at PageID #329.)

---

**[1]**The district court evidently did not give a limiting instruction requiring the jury to consider Poindexter's statement only against him. However, neither Defendant Somerville nor Defendant Sherrill requested such an instruction or objected to the district court's failure to give one below, nor do they argue on appeal that the district court erred by failing to give one. This issue is thus not preserved for our review. In any event, we have previously explained that a district court's failure to give a limiting instruction is not "problematic" if the defendant "did not request such an instruction." *United States v. Sherlin*, 67 F.3d 1208, 1216 n.1 (6th Cir. 1995).

Accordingly, the district court did not err in denying Defendants' motions to sever based on a *Bruton* issue.**2** Because there was no error, we need not address the remaining elements of the plain error analysis.

## II. Admissibility of Photographs

Defendant Sherrill next argues that the district court erred by denying his motion in limine seeking exclusion of photographs purportedly suggesting that he was affiliated with a gang, pursuant to Federal Rule of Evidence 403. Under that rule, a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." We review a district court's decision not to exclude evidence under Rule 403 for an abuse of discretion. *United States v. Sassanelli*, 118 F.3d 495, 498 (6th Cir. 1997). When applying this standard, we "take[] a maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect, and will hold that the district court erred only if the latter outweighs the former." *Id.*

Considering first these photographs' probative value, the government does not argue that Sherrill's gang affiliation—or lack thereof—was probative to this case. Instead, the government asserts—and the district court found—that the photos were probative because they helped establish the relationship between the codefendants, as well as their identities. And indeed, taking the requisite "maximal view" of the photographs' probative value, they are probative on both points—the fact that the codefendants were previously photographed together reasonably suggests that they had an ongoing relationship and that they therefore could have committed the instant crime together.

Turning to the risk of unfair prejudice, "'[u]nfair prejudice,' as used in Rule 403, . . . refers to evidence which tends to suggest decision on an improper basis." *United States v.*

---

**2**At oral argument, Somerville also asserted that the district court should have granted severance because the evidence presented against his codefendants generally tainted the jury's consideration of his case. Somerville did not raise this issue in his briefing to this Court, and so it too is not adequately preserved for our review. *See United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331 (6th Cir. 2009) ("Generally speaking . . . a party does not preserve an argument by raising it for the first time at oral argument . . . ."). Even if it were, "a 'spillover of evidence' from one case to another 'generally does not require severance,' unless [the] [d]efendant can point to specific 'substantial,' 'undue,' or 'compelling' prejudice." *Fields*, 763 F.3d at 457 (quoting *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002)). Somerville has not done so.

*Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986) (per curiam).  Sherrill contends that the photographs in question are unfairly prejudicial because they suggest that he was a part of a gang.  We have cautioned trial courts to be particularly careful in admitting evidence of gang affiliation, "since most jurors are likely to look unfavorably upon a defendant's membership in a street gang."  *United States v. Tolbert*, 8 F. App'x 372, 378 (6th Cir. 2001).

Despite Sherrill's argument, it is not clear that the photographs as admitted here actually suggested that he was affiliated with a gang.  While it is true that Defendants were making gang signs in the pictures, their hands were redacted before the pictures were admitted into evidence.  Sherrill argued at trial that the photographs should have instead been cropped to remove Defendants' hands altogether.  Indeed, this might have been preferable.  As Sherrill pointed out at trial, "sometimes redactions can call more attention to what's under" them.  (Trial Tr., R. 280 at PageID #2884.)  Perhaps another preferable course in this sense might have been to simply leave the photos unredacted, rather than drawing jurors' attention to Defendants' hands.  Still, Sherrill conceded before the district court that the redactions "accomplishe[d] the purpose of what we sought to," so he cannot now contend that those redactions themselves were improper. (*Id.*)  Sherrill further notes that the individuals photographed were wearing colors associated with gangs.   But even if true, the simple fact that a person was wearing a specific color in a photograph—especially when no evidence was presented as to any color's significance—is not unfairly prejudicial.   Altogether, when we take the appropriate "minimal view" of the photographs' unfairly prejudicial effect, they apparently cause little to no unfair prejudice to Sherrill.  It was not an abuse of discretion for the district court to find that their probative value therefore equaled or outweighed the risk of unfair prejudice, and we accordingly affirm the district court's denial of Sherrill's motion in limine.

## III.  Sufficiency of the Evidence

Defendants next argue that their convictions for attempt to commit Hobbs Act robbery and the use or carry of a firearm in relation to a crime of violence were insufficiently supported by the evidence.  We apply *de novo* review to such challenges, *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004), and inquire whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In doing so, we do not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). We will consider Defendants' convictions in turn.

**A. Hobbs Act Conviction**

The Hobbs Act penalizes those who "in any way or degree obstruct[], delay[], or affect[] commerce . . . by robbery . . . or attempt[] or conspire[] to do so." 18 U.S.C. § 1951(a). Robbery is defined as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence . . . to his person or property." *Id.* § 1951(b)(1). Defendants contest the government's proof of this crime for multiple reasons.

First, Defendants Somerville and Poindexter argue that there was insufficient evidence to show that their alleged actions interfered with interstate commerce. This argument is unpersuasive. The Supreme Court has held that "to satisfy the [Hobbs] Act's commerce element, it is enough that a defendant knowingly stole or attempted to steal drugs or drug proceeds, for, as a matter of law, the market for illegal drugs is 'commerce over which the United States has jurisdiction.'" *Taylor v. United States*, 136 S. Ct. 2074, 2081 (2016).

Under this standard, the evidence introduced at trial was clearly sufficient to allow a rational juror to find the interstate commerce element satisfied beyond a reasonable doubt. First, government witnesses testified at trial that Edwards was a drug dealer and that he was actively selling cocaine from his home around the time of his death. While Somerville argues that some witness testimony at trial suggested that Edwards was not selling drugs from his home at that time, it is not our place to "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury." *Brown*, 567 F.3d at 205.

Moreover, according to codefendant Armoni Hall, the purpose of Defendants' robbery was to take drugs and money from Edwards. (Trial Tr., R. 280 at PageID ##2793–94, 2857); *Taylor*, 136 S. Ct. at 2081–82 (finding evidence that "robberies were committed with the express intent to obtain illegal drugs and the proceeds from the sale of illegal drugs" supported the

interstate commerce element). Somerville argues that some of the codefendants' testimony did not support this intent. But "[t]he uncorroborated testimony of an accomplice alone may support a conviction," and so the jury could appropriate rely on Hall's testimony even if that had been the only evidence relevant to the interstate commerce point. *United States v. Clark*, 18 F.3d 1337, 1343 (6th Cir. 1994). Somerville further tries to undermine this testimony by arguing that Hall "changed his story" about the crime, but again, credibility determinations are appropriately the province of the jury, not this Court. *See Brown*, 567 F.3d at 205.

Finally, a government witness testified that the plant used to make cocaine is not grown in Tennessee, and so a jury could reasonably infer that the cocaine Edwards sold—and Defendants attempted to steal—had to travel across state lines. While the Supreme Court has clarified that "the Government need not show that the drugs that a defendant stole or attempted to steal either traveled or were destined for transport across state lines," *Taylor*, 136 S. Ct. at 2081, this evidence certainly bolsters the government's showing on that element, *see United States v. Ostrander*, 411 F.3d 684, 692 (6th Cir. 2005) (finding sufficient evidence to show an effect on interstate commerce because the drugs sold by the victim in that case "originated in Latin America, and thus had to get to Michigan through interstate commerce"). Altogether, there was ample evidence presented to allow a rational juror to find beyond a reasonable doubt that Defendants' offense affected interstate commerce.

Defendants Sherrill and Poindexter further argue that there was insufficient evidence to show that they actively planned or participated in the relevant robbery. This argument also fails, as the evidence was demonstrably sufficient to allow a rational juror to conclude that both aided and abetted the attempted robbery under 18 U.S.C. § 2. Under that section, "those who provide knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime." *Rosemond v. United States*, 572 U.S. 65, 71 (2014) (quoting *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 181 (1994)). As this Court has explained, "[a]iding and abetting requires that a defendant 'in some sort associate himself with the venture, that he participates in it as something he wishes to bring about, and that he seek by his action to make it succeed.'" *United States v. Davis*, 306 F.3d 398, 409 (6th Cir. 2002) (quoting *United States v. Lowery*, 60 F.3d 1199, 1202 (6th Cir. 1995)).

Thus, to be convicted, a defendant must (1) perform an act "which contributes to the execution of a crime" (2) with "the intent to aid in its commission." *Id.* (quoting *Lowery*, 60 F.3d at 1202).

With regard to Sherrill, the record suggests that he helped recruit Hall into committing the crime by showing up at his house with Somerville on January 17 and asking him whether he was "going to go or not." (Trial Tr., R. 280 at PageID ##2852–53.)  The record also suggests that Sherrill drove his codefendants to the scene of the crime and waited to pick them up afterward.[3]   And the fact that he was present for the planning of the robbery and later participated in its execution also gives rise to the reasonable inference that he actively participated in this planning.  Certainly this evidence would also allow a reasonable juror to infer that Sherrill intended to aid in the robbery.

With regard to Poindexter, by his own admission, he agreed to participate in the robbery, went with his codefendants to pick up firearms, and went with them to Edwards' house to commit the robbery.  Poindexter's primary argument on appeal is that he did not kick in Edwards' door at the scene of the robbery, but this misses the point.  While kicking in Edwards' door could have been an overt act towards the commission of the robbery, the acts that Poindexter himself admitted to also constitute overt acts.  Moreover, Poindexter's statement that he agreed to participate in the robbery is an explicit admission of his intent.  Thus, as with Sherrill, the evidence clearly supports the jury's determination that Poindexter performed an act contributing to the commission of the robbery with the requisite intent.

## B.  Firearm Conviction

Poindexter also challenges his conviction under 18 U.S.C. § 924(c), arguing that he could not be convicted thereunder because there was insufficient evidence supporting his predicate conviction under the Hobbs Act.  Sherrill, for his part, argues that he did not carry a firearm on the day of the robbery.  Again, a rational juror could find beyond a reasonable doubt that Sherrill and Poindexter aided and abetted the commission of this crime.

---

[3]Sherrill asserts on appeal that when he heard Somerville's gunshots, he "fled the scene" and did not pick up Somerville, Hall, and Poindexter. (Sherrill Br. at 22.)  But even if this is true, Sherrill evidently participated in the robbery until that point.  One cannot abandon a crime after it has been committed.

To convict a defendant under the relevant portion of 18 U.S.C. § 924(c), the government must show that he used or carried a firearm during and in relation to a crime of violence for which he could be prosecuted in federal court. [4] *Id.* § 924(c)(1)(A). To convict a defendant of aiding and abetting such a crime, the government must show that he "(1) [took] an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond*, 572 U.S. at 71. Notably, the government need not prove that Defendants facilitated their codefendants' use or carrying of firearms in particular. *Id.* at 74. Defendants "could assist in § 924(c)'s violation by facilitating either the [crime of violence] or the firearm use (or of course both). In helping to bring about one part of the offense . . . [they] necessarily helped to complete the whole." *Id.*

Turning then to Defendants' arguments, Poindexter's contention that there was insufficient evidence to support his § 924(c) conviction because there was insufficient evidence to support his underlying Hobbs Act conviction fails on its own terms.[5] As previously discussed, the evidence was sufficient to support Poindexter's Hobbs Act conviction. This same evidence also suffices to support his conviction under § 924(c).

Sherrill's arguments, too, are unavailing. Whether or not he carried a firearm on the day of the robbery and whether or not he specifically aided his codefendants' use of a firearm, for the same reasons previously discussed, the evidence sufficiently showed that he aided and abetted the attempt to commit Hobbs Act robbery. This is likewise sufficient to support his conviction under § 924(c). We therefore affirm Defendants' convictions.

---

[4]We have yet to address whether attempt to commit Hobbs Act robbery qualifies as a crime of violence under 18 U.S.C. § 924(c)'s elements clause, and we decline to do so here. Defendants do not contest this point, and so it is not before us for review.

[5]At oral argument, Defendant Somerville also asserted that his convictions under Counts 2, 3, and 4 were insufficiently supported because his Hobbs Act conviction was insufficiently supported. Somerville did not clearly advance this argument in his briefs, and it is thus insufficiently preserved for our review. *See Huntington Nat'l Bank*, 574 F.3d at 331. However, were we to nonetheless consider this contention, it also fails on its own terms, as there was sufficient evidence to support Somerville's Hobbs Act conviction for the reasons previously discussed.

**IV. Substantive and Procedural Reasonableness of Sherrill and Poindexter's Sentences**

Defendants Sherrill and Poindexter next contest their sentences, arguing that those sentences are both procedurally and substantively unreasonable.  Our procedural reasonableness inquiry turns on whether "the trial court follow[ed] proper procedures and [gave] adequate consideration to [the 18 U.S.C. § 3553(a)] factors."  *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (quoting *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020)).  Under the substantive reasonableness inquiry, by contrast, we "determine[] if the length of a sentence conforms with the sentencing goals set forth in 18 U.S.C. § 3553(a) and ask[] whether the district judge 'abused his discretion in determining that the § 3553(a) factors supported the sentence imposed.'"  *Id.* (quoting *Holguin-Hernandez*, 140 S. Ct. at 766 (internal quotation omitted)).  "In short, procedural review of a sentence concerns the propriety of the factors that go into a sentence; substantive review assesses the reasonableness of the sentence that results."  *Id.*

We generally review both aspects of a district court's sentencing decision under an abuse of discretion standard, *Gall v. United States*, 552 U.S. 38, 51 (2007), but considering the district court's factual findings for clear error and its legal conclusions *de novo* in so doing, *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019).  However, where a defendant fails to appropriately preserve a procedural reasonableness argument, we review it for plain error only.  *United States v. Herrera-Zuniga*, 571 F.3d 568, 578, 580 (6th Cir. 2009).  Substantive reasonableness arguments "do not need to be raised before the district court to be preserved for appeal," and so we apply abuse of discretion review even where such arguments were not raised below.  *United States v. Lanning*, 633 F.3d 469, 473 (6th Cir. 2011).

**A.  Sherrill's Sentence**

Beginning with Defendant Sherrill's challenges to his sentence, he first argues that the district court erred by failing to apply a two-level Guidelines adjustment based on his purportedly minor role in the attempted robbery.  *See* U.S.S.G. § 3B1.2(b).  The government responds that Sherrill waived this argument before the district court by agreeing to pursue a variance, rather than an adjustment, based on his role.  Generally speaking, we will not review

arguments that a party explicitly declined to pursue below, as one "cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course." *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) (quoting *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990)). We apply this rule out of recognition that such explicit agreement constitutes waiver, or the "intentional relinquishment or abandonment of a known right." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 732–33 (1993)).

Upon review of Sherrill's sentencing hearing transcript, it is not clear that he intentionally declined to pursue a U.S.S.G. § 3B1.2(b) adjustment. Instead, this potential waiver seems to have resulted from a simple miscommunication between Sherrill's counsel and the district court. At sentencing, Sherrill's counsel mistakenly stated that § 3B1.2(b) called for a "departure" from the Guidelines based on his role, rather than an "adjustment" to his offense level under the Guidelines.[6] (*See* Sherrill Sent'g Hr'g Tr., R. 273 at PageID #2313.) Apparently confused by counsel's misstatement, the district court explained that "an adjustment for the role in the offense is a guideline adjustment . . . [and] if you don't succeed under the guideline itself, it comes up more frequently as a variance argument," rather than as a departure argument.[7] (*Id.*) After its attempt to clarify, the court asked what course Sherrill wanted to pursue, and counsel agreed to pursue a variance. The court did not explicitly rule on the applicability of the § 3B1.2(b) adjustment thereafter, instead denying Sherrill a variance based on the same argument. Based on this exchange, it is unclear whether Sherrill intended to pursue a variance only after the district court considered the applicability of the § 3B1.2(b) adjustment, or if he intended to pursue a variance instead of a § 3B1.2(b) adjustment.

---

[6]While frequently conflated, adjustments and departures are conceptually distinct under the Guidelines. Adjustments permit the court to modify the defendant's offense level based on specific circumstances including, for instance, his acceptance of responsibility, obstruction of justice, or—as relevant here—role in the offense. *See* U.S.S.G. Ch.3. Departures allow the court, *after* it has calculated the defendant's Guidelines range, to impose a sentence outside that range based on other circumstances generally identified by the Guidelines, including the death of a victim, a victim's extreme psychological injury, or otherwise. U.S.S.G. § 1B1.1, comment. n.1(F); U.S.S.G. § 5K2.0(a).

[7]A variance is itself conceptually distinct from both an adjustment and a departure, as it allows the district court to impose a sentence outside of the Guidelines range based upon the court's weighing of the 18 U.S.C. § 3553(a) factors. *United States v. Denny*, 653 F.3d 415, 420 (6th Cir. 2011).

All things considered, whether Sherrill waived his § 3B1.2(b) argument does not matter, as that argument fails even if we treat it as appropriately preserved. We turn then to consider its merits. Section 3B1.2(b) calls for a two-level adjustment to a defendant's base offense level if he was a "minor participant" in the offense, U.S.S.G. § 3B1.2(b), or in other words, was "less culpable than most other participants in the criminal activity," *id.* § 3B1.2 comment. n.5. The Guidelines commentary clarifies that, in deciding whether to apply this adjustment, a court should consider the degrees to which a defendant understood the scope and structure of the criminal activity, participated in planning or organizing the activity, influenced or exercised decision-making authority, and stood to benefit from the activity, in addition to the nature and extent of his participation in the activity. *Id.* § 3B1.2 comment. n.3(C). The defendant bears the burden of demonstrating his minor role by a preponderance of the evidence. *United States v. Daneshvar*, 925 F.3d 766, 790 (6th Cir. 2019).

While the district court did not explicitly rule on the applicability of § 3B1.2(b) in sentencing Sherrill, any error it made in that regard was harmless and cannot support reversal. Indeed, the factual findings that the district court made in denying Sherrill a variance based on his purportedly minor role demonstrate that, even if the court had considered the applicability of § 3B1.2(b), it would have declined to apply that adjustment. *See, e.g.*, *United States v. Brown*, 444 F.3d 519, 522 (6th Cir. 2006) (finding a sentencing error harmless where the reviewing court was sure that the district court would have imposed the same sentence even without the error); *see also* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

The district court analyzed the factors relevant to § 3B1.2(b) in considering whether to grant Sherrill's requested variance. The court reasoned that Sherrill understood the scope of the crime because he "was part of" or "at least present [for]" its planning, heard Somerville assign the various roles, and knew that his codefendants were bringing guns along with them to the robbery. (Sherrill Sent'g Hr'g Tr., R. 273 at PageID #2333.) The court also explained that Sherrill's role in the offense was not a minor one, nor was he "less responsible" merely because his "task was driving the car, as opposed to walking into the house with a gun," as "everyone ha[d] to do . . . their assigned task . . . in order for the crime to occur." (*Id.*) While the court did

think that Sherrill's decision making had been swayed by Somerville's influence over him, it decided to take that fact into account by granting a separate downward variance, rather than one based on his role.  The district court did not clearly err in making these factual findings.  And altogether, this analysis suggests that if the district court had explicitly considered the applicability of § 3B1.2(b), it would have declined to apply that adjustment.  Thus, any error Sherrill alleges was harmless and provides no basis for reversal.

Turning to Sherrill's next argument, Sherrill contends that his sentence was substantively unreasonable because it was "greater than necessary" to achieve the goals of sentencing.  *See* 18 U.S.C. § 3553(a).  In considering this argument, we ask whether the district court abused its discretion in determining Sherrill's sentence.  As that sentence fell below Sherrill's Guidelines range, he must bear a heavy burden to show that it was substantively unreasonable.  *United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013).

"One way to gauge the substantive reasonableness of a sentence is to ask whether 'the court placed too much weight on some of the § 3553(a) factors and too little on others' in reaching its sentencing decision."  *Perez-Rodriguez*, 960 F.3d at 753–54 (quoting *Parrish*, 915 F.3d at 1047).  Sherrill points out his minor role in this offense, his minimal criminal history, and his efforts to overcome his difficult childhood as factors weighing in favor of a lesser sentence.

Our review of the sentencing hearing transcript confirms that the district court reasonably balanced the § 3553(a) factors in imposing its chosen sentence.  The district court considered the facts that Sherrill now points to and found that his sentence was justified despite them.  As discussed, it concluded that his role as a getaway driver was not a minor one.  It noted that Sherrill had only one prior conviction, but that he had committed the instant crime soon after the end of his prison term for the prior crime.  And the court observed that Sherrill had grown up in "a difficult situation," but despite this had graduated from high school and maintained employment.  (Sherrill Sent'g Hr'g Tr., R. 273 at PageID ##2336–37.)  After considering these facts, it concluded that a significant sentence was nonetheless appropriate, both in order to deter future conduct like this and to achieve "just punishment" for Edwards' death.  (*Id.* at ##2337–38.)  This reasoning provides us no reason to question the district court's decision.  Its weighing

of the § 3553(a) factors was reasonable, and so too was its sentence.  We therefore affirm the sentence.

**B.  Poindexter's Sentence**

Defendant Poindexter, for his part, first argues that his sentence was procedurally unreasonable because the district court "(1) failed to address his personal characteristics under 18 U.S.C. § 3553(a); (2) failed to relate the § 3553(a) factors to the variance; and (3) based the sentence on general deterrence principles not specific" to Poindexter.  (Poindexter Br. at 28.) Poindexter did not raise these procedural reasonableness arguments before the district court, and so we review them for plain error.

Poindexter provides almost no argument in support of any of these points, and each of them is meritless.  First, the district court did indeed address Poindexter's personal characteristics in articulating its § 3553(a) analysis.  In particular, it emphasized the seriousness of the robbery, Poindexter's long and violent criminal history, and his gang membership, balancing these against his mental health issues, the trouble he had getting treatment for those issues, the difficulty of his childhood due to his mother's substance abuse issues, and his positive performance in school.  Second, the district court did relate the § 3553(a) factors to its decision to vary downwards, explaining that it granted a variance in recognition of the fact that Poindexter had attempted to get mental health treatment but had been prevented from doing so by his mother and, as a result, had "less control" over his decision making with respect to the instant crime "than [he] should have had."  (Poindexter Sent'g Hr'g Tr., R. 272 at PageID #2301).  His variance thus relates to his personal history and characteristics, including his mental health and family background.  *See* 18 U.S.C. § 3553(a)(1).  Finally, the court imposed its chosen sentence in service of general penal goals—deterrence, retribution, and rehabilitation—but in a manner specific to Poindexter.  In particular, it explained its interest in "send[ing] a message to [Poindexter]" that he could not engage in violent behavior like this, ensuring that Poindexter's sentence reflected the seriousness of his offense, and providing Poindexter with access to education and mental health and substance abuse treatment.  (Poindexter Sent'g Hr'g Tr., R. 272 at PageID ##2298–300.)  Thus, Poindexter has not demonstrated that the district court erred in

any of the matters he asserts, let alone plainly erred.  Accordingly, we need not consider the remaining elements of the plain error analysis.

Poindexter next argues that a lesser sentence of 210 months "would have been sufficient, but not greater than necessary" in this case.  (Poindexter Br. at 29.)  This is a substantive reasonableness argument which we review for an abuse of discretion.  Like Sherrill, Poindexter cannot carry his heavy burden to show that his below-Guidelines sentence was unreasonable.  *See Greco*, 734 F.3d at 450.  Even if Poindexter is right that a lesser sentence might have sufficed, this Court "cannot reverse a sentence simply because [it] determine[s] that a different sentence would be appropriate."  *United States v. Higgins*, 557 F.3d 381, 398 (6th Cir. 2009).  And to the extent that Poindexter argues that the district court wrongly balanced the § 3553(a) factors, affording his "age, youth, difficult upbringing, and other characteristics" insufficient weight, (Poindexter Br. at 29), the record demonstrates otherwise.  The district court took stock of Poindexter's youth, his history of mental health issues, his difficult family circumstances, and other mitigating factors—even accounting for them in affording him a downward variance—but nonetheless concluded that a lengthy sentence was appropriate, given the gravity of Poindexter's offense, his serious criminal history, and his gang membership.  Poindexter provides no convincing argument to the contrary.

Thus, we affirm Sherrill and Poindexter's sentences in full.

## V.  Somerville's Eighth Amendment Challenge

Finally, Defendant Somerville argues that his sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment because it is not proportionate to his crime.  While we ordinarily review constitutional challenges to a district court's sentence *de novo*, we apply plain error review to unpreserved Eighth Amendment claims.  *United States v. Young*, 847 F.3d 328, 363 (6th Cir. 2017).  Because Somerville did not present this challenge before the district court, we review the district court's decision for plain error.  *Id.* at 360–61.

Eighth Amendment proportionality "evaluates a particular defendant's culpability for his crime in relation to the punishment that he has received."  *Getsy v. Mitchell*, 495 F.3d 295, 305 (6th Cir. 2007).  We apply a "narrow proportionality principle" in considering such claims, and

will find unconstitutional only "extreme sentences that are 'grossly disproportionate' to the crime." *Young*, 847 F.3d at 363 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).  Three factors are relevant to our proportionality analysis: "(1) 'the gravity of the offense and the harshness of the penalty'; (2) 'the sentences imposed on other criminals in the same jurisdiction'; and (3) 'the sentences imposed for commission of the same crime in other jurisdictions.'" *United States v. Abdulmutallab*, 739 F.3d 891, 906 (6th Cir. 2014) (quoting *Solem v. Helm*, 463 U.S. 277, 292 (1983)).  For the most part, our consideration turns on the first factor, as we reach the second and third "only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* (quoting *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring)).

Regarding the first factor, the court imposed upon Somerville the harsh sentence of life imprisonment plus ten years.  However, as recognized by the district court, Somerville's offense was grave.  Among other things, he was convicted of causing the death of another person using a firearm in a manner that constitutes murder, in violation of 18 U.S.C. § 924(j)(1).  Indeed, the court emphasized that it "[could not] imagine a more serious situation than this one," given that Somerville planned the robbery, convinced others to participate, shot both Edwards and Hall, and subsequently threatened other witnesses with violence if they spoke with law enforcement about the crime.  These facts reasonably support the district court's sentence.

In recognition of the severity of the crimes of which Somerville was convicted, Congress allowed a term of life imprisonment for two of his four crimes of conviction.  *See* 18 U.S.C. § 924(c)(1)(A)(iii) (stating that "if the firearm is discharged," the defendant shall "be sentenced to a term of imprisonment of not less than 10 years"); *id.* § 924(j)(1) (stating that "if the killing is murder," the defendant shall "be punished by death or by imprisonment for any term of years or for life").  We "grant substantial deference to" legislative determinations of "the types and limits of punishments for crimes." *Solem*, 463 U.S. at 290.  Thus, "[a] sentence within the statutory maximum . . . generally does not constitute 'cruel and unusual' punishment." *United States v. Moore*, 643 F.3d 451, 455 (6th Cir. 2011) (first alteration in original) (quoting *United States v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003)).  That is the case here.

This is even more clear upon considering Somerville's sentence in light of the Sentencing Guidelines. Life imprisonment is the Guidelines term for any offense level over 43, regardless of criminal history category. As it happens, Somerville had an offense level of 49 and the second-highest criminal history category of V, making a life sentence not only statutorily justified, but clearly justified under the Guidelines. The district court acknowledged as much in sentencing Somerville. (*See* Somerville Sent'g Hr'g Tr., R. 284 at PageID #3468 ("[T]he way the numbers actually add up, [his offense level is] 49, and 43 would have gotten him there [to a life sentence.]").) "[T]his court has held that an Eighth Amendment challenge must fail if a defendant receives a sentence within the guideline range, when the guideline range contemplates the gravity of the offense . . . ." *Abdulmutallab*, 739 F.3d at 907. So too here.

Even so, Somerville argues that his youth and mental health issues make his sentence unduly harsh. But Somerville was legally an adult at the time of his crime, and he offers no case law to support the idea that his sentence was unconstitutional because he was only nineteen. Moreover, the district court considered Somerville's age in the course of its sentencing decision. In particular, it noted that the fact that Somerville already had an extensive criminal history at this age, placing him in the second-highest criminal history category (Category V), suggested that he was likely to reoffend and needed a substantial sentence to deter and incapacitate him. Indeed, this history suggests that Somerville's sentence was not unduly harsh or grossly disproportionate.

Regarding Somerville's mental health history, the district court also considered this issue in deciding his sentence. It observed that Somerville had "issues with anxiety, impulse control, anger, [and] maybe bipolar [disorder]," some of which had been diagnosed. (Somerville Sent'g Hr'g Tr., R. 284 at PageID #3466.) But it did not think that these facts justified a more lenient sentence in light of the circumstances, particularly because "not everyone who [suffers from these conditions] . . . goes out and kills people." (*Id.*) This was not plain error, as we have rejected the notion that even a defendant's reduced culpability as a result of a mental disability automatically "transforms an otherwise constitutional sentence into an unconstitutional one." *Moore*, 643 F.3d at 454. Somerville does not argue that he had a mental disability that affected his understanding of his conduct, and he offers no support for the notion that his sentence is

unconstitutional simply because he had a history of mental health issues.  This fact thus provides no reason to overturn the district court's sentencing decision.

Somerville also appears to raise a substantive reasonableness challenge to his sentence. Although he does not develop this argument explicitly, it is evidently based upon the same reasoning as his Eighth Amendment claim—specifically, that his sentence was too long in light of his age and mental health history.  But this substantive reasonableness claim fails for the same reasons that Somerville's Eighth Amendment claim fails.   His sentence was within the Guidelines recommendation, and the district court gave "adequate consideration to [the § 3553(a) factors]."  *Perez-Rodriguez*, 960 F.3d at 753 (alteration in original) (quoting *Holguin-Hernandez*, 140 S. Ct. at 766).)  Accordingly, the district court did not abuse its discretion, and Somerville's sentence is substantively reasonable.

It should be noted that the Supreme Court has not yet decided whether a defendant may raise on direct appeal an Eighth Amendment claim that his life sentence is disproportionate, and hence cruel and unusual, because he is between the ages of eighteen and twenty-one.  It has long recognized, however, that "children are constitutionally different from adults for purposes of sentencing."  *Miller v. Alabama*, 567 U.S. 460, 471 (2012); *see also id.* at 465 (holding unconstitutional state mandatory life-without-parole sentences for homicide offenses for those under eighteen); *Graham v. Florida*, 560 U.S. 48, 52–53 (2010) (same regarding life-without parole sentences for nonhomicide cases); *Roper v. Simmons*, 543 U.S. 551, 555–56 (2005) (same regarding capital punishment).  While we have historically declined to extend this reasoning to individuals over the age of eighteen, *see United States v. Marshall*, 736 F.3d 492, 500 (6th Cir. 2013), in determining whether a sentence is cruel and unusual, we "must look beyond historical conceptions to 'the evolving standards of decency that mark the progress of a maturing society,'" *Graham*, 560 U.S. at 58 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).  Members of this Court have already begun to consider whether the line separating childhood and adulthood has shifted due to society's recognition that young adults between the ages of eighteen and twenty-one are mentally more like children than adults, pointing to various contexts in which we consider twenty-one the age of majority, as well as scientific and social research indicating that

those under twenty-one retain the defining characteristics of youth.  *Pike v. Gross*, 936 F.3d 372, 385 (6th Cir. 2019) (Stranch, J., concurring).

The acknowledgement of youth's impact is vital in the federal sentencing context.  To be sure, the United States Sentencing Guidelines disfavors granting downward departures based on age, including youth.  *United States v. Bostic*, 371 F.3d 865, 875 (6th Cir. 2004) (discussing U.S.S.G. § 5H1.1).  But a district court may consider age as part of the "history and characteristics of the defendant" in balancing the § 3553(a) factors, as occurred here.  *United States v. Davis*, 537 F.3d 611, 617 (6th Cir. 2008) (quoting 18 U.S.C. § 3553(a)(1)).  We leave to a future case the issue of whether a life sentence would be cruel and unusual or substantively unreasonable if a young-adult defendant's criminal history and other conduct do not outweigh his youth.  Those circumstances are simply not present in this case.

Thus, because the district court did not err in imposing Somerville's sentence, we affirm without reaching the remaining factors of the plain error analysis.

## CONCLUSION

For these reasons, we **AFFIRM** the district court's decision in its entirety.

---

**CONCURRING IN PART AND IN THE JUDGMENT**

---

MURPHY, Circuit Judge, concurring in part and concurring in the judgment.  I join most of the court's exhaustive opinion affirming the convictions in these cases.  But I do not join the two paragraphs near the opinion's end suggesting that our court may one day find that a life sentence violates the Eighth Amendment (or is substantively unreasonable) because it is imposed on an adult between the ages of 18 and 21.  Maj. Op. 25–26.  Respectfully, I find these paragraphs unnecessary to the decision in this case because Willie Somerville did not raise any type of categorical Eighth Amendment or substantive-reasonableness challenge based on his age.

I also find the paragraphs in tension with our caselaw.  "The Supreme Court's decisions limiting the types of sentences that can be imposed upon juveniles [under the Eighth Amendment] all presuppose that a juvenile is an individual with a chronological age under 18." *United States v. Marshall*, 736 F.3d 492, 498 (6th Cir. 2013) (citing *Miller v. Alabama*, 567 U.S. 460, 465 (2012); *Graham v. Florida*, 560 U.S. 48, 74 (2010); *Roper v. Simmons*, 543 U.S. 551, 568 (2005)).  As my colleagues recognize, we have thus noted that, "[f]or purposes of the Eighth Amendment, an individual's eighteenth birthday marks [a] bright line" between juveniles and adults.  *Marshall*, 736 F.3d at 500.  And we have held that an immature 20-year-old with a rare physiological condition "is still an adult" and "does not qualify for the Eighth Amendment protections accorded to juveniles."  *Id.*; *see also United States v. Chavez*, 894 F.3d 593, 609 (4th Cir. 2018).

I lastly find the paragraphs in tension with the Supreme Court's general Eighth Amendment jurisprudence.  When considering whether a punishment violates "evolving standards," the Court typically "begins with objective indicia of national consensus."  *Graham*, 560 U.S. at 62.  And when identifying our national consensus, courts should initially look to the "legislation enacted by the country's legislatures" about proper criminal punishments, not to social-science studies.  *Id.* (citation omitted); *see Roper*, 543 U.S. at 564–68.